**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Submitted: September 19, 2014          Decided: January 26, 2015)

Docket No. 13-4078

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

LUIS MATTA,

*Defendant-Appellant.*

_____

Before:

CABRANES and LOHIER, *Circuit Judges*, and ENGELMAYER, *District Judge*.[*]

In connection with violation of supervised release proceedings, Luis Matta was sentenced to a 24-month term of imprisonment to be followed by 12 months of supervised release. As special conditions of supervised release, the District Court (Dora L. Irizarry, *Judge*) included four months in a residential reentry center and participation in a drug treatment or detoxification program. The District Court left it to the discretion of the federal Probation Department to decide whether Matta would be required to participate in an inpatient or outpatient drug treatment program. Matta now appeals his sentence, including the District Court's delegation of the decision

---

[*] Judge Paul A. Engelmayer of the United States District Court for the Southern District of New York, sitting by designation.

1

to select between inpatient and outpatient drug treatment. Because we agree that the District Court's delegation of this decision to the Probation Department was improper, we **VACATE** that portion of the sentence and **REMAND** to the District Court. We otherwise **AFFIRM** the sentence.

Yuanchung Lee, Assistant Federal Public Defender, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant.*

Susan Corkery, Margaret E. Lee (on the brief), *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee.*

LOHIER, *Circuit Judge*:

The principal issue we are asked to consider on this appeal is whether a sentencing court may delegate its sentencing authority to the United States Probation Department[1] to determine whether a defendant should undergo inpatient or outpatient drug treatment as a special condition of supervised release. Here, the District Court (Irizarry, <u>J.</u>) imposed a special condition of supervised release that delegated the discretion to select between inpatient

---

[1] District Courts in this Circuit appear to call the office responsible for administering federal probation and pretrial services functions by various names. <u>See, e.g.</u>, United States Probation Department for the Eastern District of New York, http://www.nyep.uscourts.gov (last visited Jan. 12, 2015); United States Probation Office for the Southern District of New York, http://probation.nysd.uscourts.gov (last visited Jan. 12, 2015); United States Probation and Pretrial Services for the Western District of New York, http://www.nywp.uscourts.gov (last visited Jan. 12, 2015). Because this case arises in the Eastern District of New York, we refer to the office as the "Probation Department." For a general account of the history and role of federal probation officers, see <u>United States v. Reyes</u>, 283 F.3d 446, 455-57 (2d Cir. 2002).

and outpatient treatment to the Probation Department.  On appeal, Luis Matta challenges the delegation and also attacks his sentence on other grounds.  We agree that the District Court's delegation was improper, and we vacate the special condition effectuating it and remand with instructions that the District Court itself select which form of treatment, if any, Matta should undergo.  We reject Matta's remaining sentencing challenges and affirm in all other respects.

## BACKGROUND

I.    The Supervised Release Violations

In 2007 Matta pleaded guilty to being a felon in possession of a firearm and was sentenced principally to 36 months' imprisonment and three years of supervised release.  In August 2012 Matta was released from prison and began his term of supervised release.  Within two months of Matta's release, the Probation Department issued a violation of supervised release ("VOSR") report charging Matta with assaulting ("Charge One") and menacing ("Charge Two") the mother of his child by punching her repeatedly in the face.  Three other VOSR reports followed, charging Matta with using cocaine ("Charge Three"), failing to reside in and abide by the rules of a residential

3

reentry center for a period of 120 days ("Charge Four"), jumping over a

subway turnstile without permission ("Charge Five"), leaving a drug

treatment program early without permission ("Charge Six"), and failing to

report to the Probation Department ("Charge Seven").

On September 5, 2013, the Probation Department issued a final VOSR

report describing New York State charges that had been filed against Matta

after an incident on August 31, 2013, in which Matta reportedly threatened a

female friend with a knife while intoxicated and kicked down her apartment

door after she refused to let him into the apartment.  Although New York

eventually dismissed these charges, the Probation Department charged Matta

with three violations relating to the incident:  menacing ("Charge Eight"),

criminal mischief ("Charge Nine"), and possession of a weapon ("Charge

Ten").

II.      Resolution of the Charges

In August 2013 the District Court found Matta guilty of Charges One

through Three and revoked his supervised release.[2]  As for the remaining

---

[2] The District Court made this finding after reviewing the record of an evidentiary hearing conducted by a magistrate judge regarding those charges and adopting the magistrate judge's report and recommendation.  Matta did

4

charges, in October 2013 Matta pleaded guilty to Charges Four through Seven, while the Government agreed to dismiss Charges Eight through Ten (relating to the August 31, 2013 incident).

After accepting Matta's guilty plea, the District Court, with the consent of the parties, proceeded immediately to sentencing. At sentencing Matta's counsel raised the issue of Matta's prior drug use and the appropriateness of drug treatment, remarking that while "maybe drug testing and treatment, special condition is appropriate, I don't think it would be appropriate at this time to order a condition of inpatient treatment." Joint App'x at 116. After determining that Matta's Sentencing Guidelines range was 8 to 14 months – a calculation uncontested by either party – the District Court proceeded to review the factors listed in 18 U.S.C. § 3553(a). In particular, the court considered the events of August 31, 2013 that gave rise to the dismissed charges against Matta:

> But I have to say, I have to agree with Probation, that you weren't even on supervised release for six months before the violations really started to roll in, beginning with a very serious incident of violence. It's interesting that these incidents involving violence involve women.

---

not contest the third charge, and in any event on appeal does not challenge the conviction on Charges One through Three.

5

> There was serious injury to the victim, and that was proven to this Court's satisfaction and the Magistrate Judge's satisfaction by a preponderance of the evidence.
>
> . . . .
>
> [E]ven though charges eight through ten were dismissed, it is disturbing that again it involved a violent incident with a woman.
>
> Alcohol was involved. . . .
>
> So I don't know how much of any lesson you have learned, quite frankly. I don't think you have learned any lesson whatsoever.

Joint App'x at 119-20.

The District Court sentenced Matta principally to a term of imprisonment of 24 months,[3] to be followed by 12 months of supervised release, including four months in a residential reentry center. The court also required Matta to participate in a drug treatment or detoxification program as a special condition of supervised release. In doing so, the court left it "to the discretion of Probation" to decide whether an inpatient or outpatient program was "most appropriate." The subsequent judgment of conviction confirmed that Matta would be required to "participate in an outpatient and/or inpatient

---

[3] The Government and the Probation Department had recommended a 14-month term of imprisonment.

drug treatment or detoxification program approved by the U.S. Probation

Department." Joint App'x at 129. Matta failed to object to the imposition of

this special condition.

This appeal followed.

**DISCUSSION**

I.      <u>Delegation to the Probation Department</u>

In addition to attacking the reasonableness of his sentence, Matta

argues that the District Court impermissibly delegated its sentencing

authority by allowing the Probation Department to determine whether he

should undergo inpatient or outpatient drug treatment as a condition of

supervised release. Because we agree that the delegation was impermissible

for the reasons explained below, we vacate that portion of the sentence and

remand to the District Court to determine for itself whether such treatment, if

still necessary, should be on an inpatient or outpatient basis.

As an initial matter, the Government points out that Matta failed to

object to the District Court's delegation and argues that we should review it

for plain error. It urges that on plain error review Matta's argument fails

because there was no clear precedent preventing the District Court's

delegation; in other words, the error was not "plain." We appreciate that Matta failed to object to this particular condition of supervised release at sentencing, and we agree with the Government that under those circumstances we ordinarily review for plain error. United States v. Green, 618 F.3d 120, 122 (2d Cir. 2010) ("Generally, we review conditions of supervised release for abuse of discretion. When the defendant does not object to the conditions, however, we review only for plain error." (citation omitted)). But plain error review is not always warranted in the sentencing context. We have explained that "the plain error doctrine should not be applied stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context." United States v. Gamez, 577 F.3d 394, 397 (2d Cir. 2009) (citing United States v. Williams, 399 F.3d 450, 456-57 (2d Cir. 2005)). And so we have employed a "relaxed" form of plain error review in those rare cases in which the defendant lacked sufficient prior notice that a particular condition of supervised release might be imposed. See Green, 618 F.3d at 122; United States v. Sofsky, 287 F.3d 122, 125-26 (2d Cir. 2002).

Here, we conclude that Matta did not have a sufficient opportunity to raise a contemporaneous objection to the challenged delegation as a condition of supervised release. Matta could not have known of the delegation until the District Court had imposed sentence: the PSR made no mention of delegating to the Probation Department the decision as to treatment; nor did the District Court warn Matta of the possibility before imposing sentence, and even then all that the court said was that it would leave "to the discretion of Probation" the decision whether an inpatient or outpatient program was "most appropriate." Joint App'x at 120. Accordingly, "[b]oth because the alleged error relates only to sentencing and because [Matta] lacked prior notice, we will entertain his challenge without insisting on strict compliance with the rigorous standards" of plain error review. Sofsky, 287 F.3d at 125-26.

We turn next to the merits of Matta's challenge to the District Court's delegation. The power to impose special conditions of supervised release, including participation in a substance abuse program, is vested exclusively in the district court. See 18 U.S.C. § 3583; U.S.S.G. § 5D1.3(b), (d)(4). It is true that a district court may delegate to a probation officer decisionmaking authority over certain minor details of supervised release – for example, the

selection of a therapy provider or treatment schedule. See United States v. Peterson, 248 F.3d 79, 85 (2d Cir. 2001). But a district court may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion. See id. For example, if, as a special condition of supervised release, a defendant is "required to participate in a [substance abuse] intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer." Id. In other words, the extensive "supervision mission" of federal probation officers includes "execut[ing] the sentence," United States v. Reyes, 283 F.3d 446, 456 (2d Cir. 2002) (emphasis omitted), but not imposing it.

There is no dispute that, in the context of supervised release at least, inpatient drug treatment programs are sufficiently more restrictive than outpatient programs that the difference between the two programs might be said to be the difference between liberty and the loss of liberty. In inpatient drug treatment, the offender can remain at a designated facility 24 hours each day for several months, unable to hold a job or regularly commune with

friends and family. In outpatient drug treatment, by contrast, the same offender can reside at home and hold a job. See Nat'l Inst. on Drug Abuse, Principles of Drug Addiction Treatment 33-35 (3d ed. 2012).

Because of these differences, the Ninth and Tenth Circuits, the only other circuits to have considered the issue in precedential opinions, have held that district courts may not delegate to the Probation Department the decision to require inpatient or outpatient treatment.[4] United States v. Mike, 632 F.3d 686 (10th Cir. 2011); United States v. Esparza, 552 F.3d 1088 (9th Cir. 2009). Both circuits have recognized that "[i]n terms of the liberty interest at stake, confinement to [an inpatient] facility is far more restrictive than having to attend [outpatient treatment] sessions, even daily." Esparza, 552 F.3d at 1091; see also Mike, 632 F.3d at 695 ("Conditions [like inpatient treatment] that touch on significant liberty interests are qualitatively different from those that do not."). The importance of the distinction between inpatient and outpatient treatment is bolstered by "Congress' recognition of procedural and substantive protections that apply to civil commitment to inpatient facilities."

---

[4] In non-precedential dispositions, two other circuits have suggested that such a delegation is permissible. See United States v. Cutler, 259 F. App'x 883, 886-87 (7th Cir. 2008); United States v. Calnan, 194 F. App'x 868, 870-71 (11th Cir. 2006). But neither of these orders contains any extensive analysis of the specific issue before us.

Esparza, 552 F.3d at 1091 (citing 18 U.S.C. § 4248 (civil commitment of "sexually dangerous" persons)).

We agree with both of our sister circuits that, "[i]n light of this difference [between inpatient and outpatient treatment], . . . granting the probation officer the discretion to decide whether such conditions will be imposed is tantamount to allowing him to decide the nature or extent of the defendant's punishment," and that "any condition that affects a significant liberty interest, such as one requiring the defendant to participate in residential treatment . . . must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." Mike, 632 F.3d at 695-96; see Esparza, 552 F.3d at 1091 (vacating condition of supervised release that delegated discretion to probation officer); see also 18 U.S.C. § 3583(d)(2).

Applying "relaxed" plain error review, we conclude that the District Court's delegation to the Probation Department of the discretion to require either inpatient or outpatient drug treatment was an impermissible delegation of judicial sentencing authority. We therefore vacate that portion of the

sentence and remand to the District Court to impose inpatient or outpatient treatment as a special condition of supervised release, if necessary.

##### II.     Community Confinement

Matta also argues that his sentence unlawfully exceeds the statutory maximum of 24 months' imprisonment because his 24-month term of imprisonment is to be followed by four months in a residential reentry center as a special condition of supervised release.  We reject Matta's argument for two reasons.

First, 18 U.S.C. § 3583(d) specifically authorizes district courts to require defendants to "reside at, or participate in the program of, a community corrections facility" as a special condition of supervised release.  18 U.S.C. § 3563(b)(11); see id. § 3583(d) (granting the district court the authority to order as a condition of supervised release "any condition set forth as a discretionary condition of probation in section 3563(b)").  Because Matta's four months in a residential reentry center was imposed as a condition of supervised release, and supervised release necessarily follows incarceration, Matta's sentence is authorized by statute.

Second, 18 U.S.C. § 3583(e) sets the statutory maximum as a cap only on time spent "in prison." Id. § 3583(e). Residential reentry is a form of community confinement, not a form of home confinement or an extension of prison. Indeed, residential reentry centers are sometimes referred to as "community confinement" facilities, see U.S.S.G. § 5F1.1, or "halfway houses," as Matta himself described them during his sentencing, Joint App'x at 110. We have emphasized that "'[i]mprisonment' and 'community confinement' are not synonyms. 'Imprisonment' is the condition of being removed from the community and placed in prison, whereas 'community confinement' is the condition of being controlled and restricted within the community." United States v. Adler, 52 F.3d 20, 21 (2d Cir. 1995). As a form of community confinement, therefore, residential reentry is neither a term of imprisonment nor a substitute for prison.[5] Accordingly, under the Sentencing Guidelines, residence in a community confinement facility "may be imposed as a condition of supervised release," U.S.S.G. § 5D1.3(e)(1), beyond the

---

[5] To support his argument that placement in a residential reentry center is a form of imprisonment, Matta notes that federal inmates are placed in such centers during the final months of their prison term. See 18 U.S.C. § 3624(c)(1). He overlooks the fact that residential reentry may be used for purposes or in ways beyond those related to supervised release. See id. § 3563(b)(11) (authorizing residential reentry as a condition of probation); id. § 3624(c) (authorizing residential reentry as a form of prerelease custody).

statutory maximum term of imprisonment, see Pepper v. United States, 131 S.

Ct. 1229, 1248 n.15 (2011) ("Supervised release follows a term of

imprisonment and serves an entirely different purpose than the sentence

imposed under § 3553(a)." (emphases added)).

III.     Procedural and Substantive Reasonableness

Lastly, Matta challenges his 24-month term of imprisonment as both

procedurally and substantively unreasonable.

Procedural reasonableness focuses on whether a district court "fails to

calculate the Guidelines range . . . , makes a mistake in its Guidelines

calculation, . . . treats the Guidelines as mandatory . . . [,] does not consider

the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of

fact." United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).

Substantive reasonableness "focuses on a district court's explanation of its

sentence in light of the factors contained in 18 U.S.C. § 3553(a)." United States

v. Gonzalez, 529 F.3d 94, 98 (2d Cir. 2008).  "In examining the substantive

reasonableness of a sentence, we review the length of the sentence imposed to

determine whether it 'cannot be located within the range of permissible

decisions.'" United States v. Rubin, 743 F.3d 31, 39 (2d Cir. 2014) (quoting

15

United States v. Watkins, 667 F.3d 254, 261 (2d Cir. 2012)); see United States v. Park, 758 F.3d 193, 199 (2d Cir. 2014) ("[O]ur substantive review of a sentence is akin to review under an 'abuse-of-discretion' standard, a form of review with which appellate courts are long familiar."). With these principles in mind, we conclude that Matta's sentence of imprisonment was neither procedurally nor substantively unreasonable.

In pressing his claim of procedural unreasonableness, Matta argues that the District Court should not have considered conduct relating to the dismissed charges from the August 31, 2013 incident. We review this claim for plain error because Matta failed to raise it before the District Court at sentencing even though he had the opportunity to do so. We barely discern error, let alone plain error, in the court's brief reference to the August 31 incident. The reference constituted a negligible part of the sentencing record. In referring to the incident, moreover, the District Court explained that its sentence rested on several factors surrounding Matta's violations and that it was well aware that Matta's conduct on August 31 resulted in "charges [that] were dismissed." Joint App'x at 119. Moreover, the court referred to the

August 31 incident not as a violation or "charge," but as yet another example of a situation involving Matta, a woman, and violence.

We also reject Matta's challenge to his sentence as substantively unreasonable on the ground that his 24-month term of imprisonment exceeded the recommended Sentencing Guidelines range of 8 to 14 months (and the 14-month sentence proposed by the Government and the Probation Department).  The District Court adequately explained its sentence by reference to the factors listed in § 3553(a), and on this record we cannot say that the sentence it imposed exceeds the "range of permissible decisions." Rubin, 743 F.3d at 39 (quotation marks omitted); see United States v. Pelensky, 129 F.3d 63, 69 (2d Cir. 1997) ("[T]he court ultimately has broad discretion to revoke its previous sentence and impose a term of imprisonment up to the statutory maximum." (quotation marks omitted)).

**CONCLUSION**

For the foregoing reasons, we **VACATE** and **REMAND** with respect to the challenged condition of supervised release, and otherwise **AFFIRM** the sentence.