18-2236-cr
*United States v. Degroate*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2019

No. 18-2236-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

LAMEIK DEGROATE, AKA LA GUNZ,
*Defendant-Appellant,*

KERVON BLANCHARD, AKA SWURVE, WALTER J. COBBS, AKA MISTER,
JACQULINE CUMMINES, AKA JACQUELINE CUMMINGS, SARAH
DELLAROCCO, TONI M. DELLAROCCO, ROLAND EVANS, AKA GREEN
EYES, BRIANNA GRIMES, MARVIN D. HILL, AKA HEATERS, AKA REGGIE,
JOSEF M. JARVIS, AKA COMF, JABREE JONES, AKA BREEZY, MELISSA B.
MAJEWSKI, KEVIN D. MCGOUGH, AKA KEV, JAMELL S. MODEST, AKA
MONEY MEL, LARELL A. MOODY, AKA RELLY, AKA EL-RELLS, AKA L-
RELLZ, ANDRE JR. PORTER, AKA LEGEND, DARIUS G. SMITH, AKA "D,"
ANTONIO STURDIVANT, AKA BUTCHIE, AKA HOT ONES, QARAAN WEST,
AKA Q-BERROW,
*Defendants.*

On Appeal from the United States District Court
for the Northern District of New York

SUBMITTED: SEPTEMBER 16, 2019
DECIDED: OCTOBER 4, 2019

Before: NEWMAN, CABRANES, and LYNCH, *Circuit Judges*.

Defendant-Appellant Lameik Degroate ("Degroate") appeals from a judgment of the United States District Court of the Northern District of New York (Thomas J. McAvoy, *Judge*) sentencing him to an 18-month term of imprisonment following a second revocation-of-supervised-release hearing. Degroate argues that the District Court abused its discretion by denying him an opportunity to present a mitigation witness at his revocation hearing. He further argues that his sentence is procedurally unreasonable because one of the conditions that he admitted to violating was imposed unlawfully. Specifically, he claims that the District Court impermissibly delegated its judicial authority to the U.S. Probation Office when it imposed a special curfew condition, and that Degroate's subsequent violations of this curfew condition were not a proper basis for revoking his supervised release. Finally, Degroate argues that his above-guideline sentence is substantively unreasonable because the District Court placed undue weight on his perceived dangerousness and failed to account for other mitigating factors. For the reasons set forth below, we find no merit in

Degroate's arguments. Accordingly, we **AFFIRM** the District Court's judgment.

---------------

Karen Folster Lesperance, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney, Northern District of New York, Albany, NY, *for Appellee*.

James P. Egan, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender, Syracuse, NY, *for Defendant-Appellant*.

---------------

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-Appellant Lameik Degroate ("Degroate") appeals from a judgment of the United States District Court of the Northern District of New York (Thomas J. McAvoy, *Judge*) sentencing him to an 18-month term of imprisonment following a second revocation-of-supervised-release hearing. Degroate argues that the District Court abused its discretion by denying him an opportunity to present a mitigation witness at his revocation hearing. He further argues that his sentence is procedurally unreasonable because one of the conditions that he admitted to violating was imposed unlawfully. Specifically, he claims that the District Court impermissibly delegated its judicial authority to the U.S. Probation Office ("USPO" or "Probation Office")

3

when it imposed a special curfew condition, and that Degroate's subsequent violations of this curfew condition were not a proper basis for revoking his supervised release. Finally, Degroate argues that his above-guideline sentence is substantively unreasonable because the District Court placed undue weight on his perceived dangerousness and failed to account for other mitigating factors. For the reasons set forth below, we find no merit in Degroate's arguments. Accordingly, we **AFFIRM** the District Court's judgment.

## I. BACKGROUND

On March 28, 2012, Degroate was charged in a two-count indictment with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d) (Count One), and conspiring to distribute and possess with the intent to distribute 280 grams or more of a mixture or substance containing cocaine base (crack), in violation of 21 U.S.C. § 846 (Count Two). On April 26, 2013, pursuant to a written plea agreement, Degroate pleaded guilty to Count One of the indictment. On September 9, 2013, he was sentenced to a 73-month term of imprisonment, to be followed by a three-year term of supervised release. On April 14, 2015, pursuant to 18 U.S.C. § 3582(c)(2),[1] the

---

[1] Section 3582(c)(2) provides that "in the case a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent

4

District Court reduced Degroate's sentence to a 63-month term of imprisonment followed by a three-year term of supervised release based on a retroactive lowering of the applicable sentencing guideline range authorized by new legislation.

## A.    Revocation of Degroate's First Term of Supervised Release

Degroate completed his term of imprisonment and commenced supervision on November 18, 2016. Two months later, Degroate violated the terms of his supervised release by testing positive for alcohol. Degroate would subsequently accumulate seven violations of supervised release.[2] In response to these violations, and upon consent, the District Court modified Degroate's conditions of supervised release to include a temporary curfew and participation in a mental health program and residential "reentry" program. Degroate was soon removed from the reentry program for, *inter alia*, threatening a staff member with shooting sounds and statements such as "you're going to get yours" and "[you're a] dead man walking."[3]

On August 28, 2017, the USPO filed a petition to revoke Degroate's supervised release. At the October 10, 2017 revocation

---

with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

[2] These violations included two incidents of new criminal conduct (arising from two traffic stops), two incidents of failure to report "police contact" to the Probation Office, a curfew violation, association with a felon, and expulsion from a mandated residential reentry program.

[3] App. 88.

hearing, Degroate admitted to three violations of the conditions of his supervised release: (1) failing to complete a four-month residential reentry program; (2) associating with felons; and (3) failing to report contact with police to the USPO. The District Court revoked Degroate's supervised release and sentenced him to imprisonment for a term of eight months, to be followed by a 24-month term of supervised release.[4] In addition to the standard conditions of supervised release, the District Court also required that Degroate "comply with a curfew commencing on a date and under conditions to be set by the probation officer."[5] Degroate did not object to this special condition at the revocation hearing.

## B.    Degroate Violates the Conditions of his Second Term of Supervised Release

Degroate commenced his second term of supervised release on April 27, 2018. Approximately three weeks later, Degroate was interviewed by local police at a strip club, where he had been associating with a twice-convicted felon past curfew. On June 5, 2018, he consented to a modification of the terms of his supervision. Specifically, Degroate agreed to comply with a renewed two-month curfew "commencing on a date and under conditions to be set by the

---

[4] Based on Degroate's grade C violations and his criminal history category of II, his advisory Guideline range of imprisonment was four to ten months. *See* U.S.S.G. § 7B1.4(a). His maximum statutory term of imprisonment was 24 months. *See* 18 U.S.C. § 3583(e)(3).

[5] App. 107.

probation officer."[6] He further consented to the use of "[l]ocation and/or monitoring technology" to monitor his compliance with the curfew.[7] On June 6, 2018, the District Court ordered the agreed-upon modifications to the terms of supervised release.

On June 29, 2018, the USPO received an alert from the electronic monitoring company that Degroate had been tampering with his monitoring bracelet. The USPO would later learn that Degroate had in fact used a screwdriver to remove the pins from his ankle bracelet. Degroate was immediately summoned to the Probation Office, where he was equipped with a new bracelet and instructed to remain on "lock-down" for the weekend. Degroate left his home twice during the lock-down: once on June 30 to visit a private residence and the Family Dollar store, and again on July 1 to sit on his back porch in order to escape the heat of his nonair-conditioned home.

On July 2, 2018, the Probation Office filed a second petition to revoke Degroate's supervised release based on three violations: (1) location monitoring violations; (2) a curfew violation; and (3) association with a felon.

---

[6] *Id.* at 111.

[7] *Id.*

## C.    Degroate's Second Revocation Hearing and Sentencing

The District Court held a final supervised release revocation hearing on July 20, 2018, at which Degroate admitted to the electronic monitoring violations and the curfew violation.

Before delivering his argument concerning sentencing, Degroate's counsel requested that Degroate's mother be given the opportunity to speak. Judge McAvoy declined this request, explaining that while "[i]t's not that she wouldn't have something that I would want to hear . . . over the 32 years that I have been doing this, we have never allowed . . . somebody [to] speak on behalf of the defendant unless that somebody were representing him as counsel or in another capacity."[8] Judge McAvoy further explained that allowing the defendant's friends and relatives to speak would lead to something "like a trial to listen to other people tell us about what their opinion would be as to what I should do with the defendant."[9] As Judge McAvoy concluded, "the rule has been, and it's never been breached, that at sentencing, no one but the defendant [and] defense counsel can speak — and the victims, of course, have a statutory right to speak. . . . That's the rule and we have to follow the rule. I just don't want to be inundated with 50 other people."[10] Degroate's counsel thanked the District Court for its consideration and proceeded to request that the

---

[8] *Id.* at 121.

[9] *Id.*

[10] *Id.*

District Court sentence Degroate to time-served or a below-guideline sentence. The Government, in turn, requested a sentence of "at least 10 months if not an above-guideline sentence."[11] The District Court ultimately sentenced Degroate to an above-guideline sentence of 18 months' imprisonment, to be followed by a 10-month term of supervised release.[12]

On appeal, Degroate contends that his 18-month sentence is both procedurally and substantively unreasonable. First, he argues that the District Court procedurally erred by declining counsel's request to have Degroate's mother address the court at the July 20, 2018 revocation hearing. Second, he claims that the District Court impermissibly delegated its judicial authority to the Probation Office when it imposed a curfew "commencing on a date and under conditions to be set by the probation officer," and that any subsequent violation of this invalid condition was not a proper basis for revocation. Finally, Degroate challenges the substantive reasonableness of his above-guideline sentence, claiming that the District Court focused exclusively on the seriousness of Degroate's offense without taking into account mitigating factors such as the nature and circumstances of the offense and the history and characteristics of the defendant.

---

[11] *Id.* at 128.

[12] Based on Degroate's grade C violations and his criminal history category of II, his advisory Guideline range of imprisonment was four to ten months. *See* U.S.S.G. § 7B1.4(a). His maximum statutory term of imprisonment was 24 months. *See* 18 U.S.C. § 3583(e)(3).

## II. DISCUSSION

### A.    Standards of Review

"We review the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard."[13] As we have frequently observed,"[a] district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions."[14]

"A district court commits procedural error where it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence."[15]

In examining the substantive reasonableness of a sentence, we review the length of the sentence imposed to determine whether it

---

[13] *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018).

[14] *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, alteration, and citation omitted); *see also In re City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010) (explaining that "abuse of discretion" is a nonpejorative "term of art").

[15] *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012).

cannot be located within the range of permissible decisions."[16] We focus in particular on a "district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a),"[17] and "whether a factor relied on by a sentencing court can bear the weight assigned to it."[18] Our review for substantive reasonableness is "particularly deferential," and we have said that will set aside a sentence as substantively unreasonable if it is "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice."[19]

Finally, where a defendant fails to raise his procedural objections at the time of sentencing, we review for plain error.[20] "To establish plain error, a defendant must demonstrate that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights, which in the ordinary case means it affected the outcome of the

---

[16] *United States v. Matta*, 777 F.3d 116, 124 (2d Cir. 2015) (internal quotation marks omitted).

[17] *Id.* (internal quotation marks omitted).

[18] *United States v. Rigas*, 583 F.3d 108, 122 (2d Cir. 2009) (internal quotation marks omitted).

[19] *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted).

[20] *United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008).

district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[21]

## B. Procedural Reasonableness

### 1. Denying Degroate's Mother an Opportunity to Address the District Court at the July 20, 2018 Revocation Hearing

Degroate contends that the District Court abused its discretion by denying his mother an opportunity to address the court at his July 20, 2018 revocation hearing. Degroate failed to object to this alleged procedural error. Accordingly, we review for plain error.

Pursuant to Federal Rule of Criminal Procedure 32.1(b)(2)(E), a supervisee must be given "an opportunity to make a statement and present any information in mitigation" at his revocation hearing. Degroate contends that the phrase "any information in mitigation" requires that he be allowed to present live testimony from friends or family members who can speak to Degroate's character. We conclude that a supervisee's right of allocution at his revocation hearing does not include the right to call character witnesses.

In 2005, Rule 32.1(b)(2)(E) was amended to explicitly recognize a supervisee's right to allocution at a revocation hearing. Prior to this amendment, Courts of Appeals had divided on the question of

---

[21] *United States v. Boyland*, 862 F.3d 279, 288–89 (2d Cir. 2017) (internal quotation marks and alterations omitted).

12

whether, in the absence of an explicit provision for allocution rights, a supervisee was entitled to present mitigating information at a revocation hearing. Those courts that had upheld such a right had done so by incorporating the right of allocution under Rule 32—which governs post-conviction sentencing—into Rule 32.1. But as one Court of Appeals observed, the problem with the incorporation approach was that it would require application of other provisions specifically applicable to sentencing proceedings under Rule 32, but not expressly contemplated by Rule 32.1.[22]

The Advisory Committee on Rules of Criminal Procedure (the "Committee") sought to remedy this issue by amending Rule 32.1 to explicitly provide for a supervisee's right to allocution at his revocation hearing.[23] But there is no indication that in so doing, the Committee intended to expand the scope of the right to allocution at Rule 32.1(b)(2) revocation hearings beyond what a defendant is entitled to at a Rule 32 post-conviction sentencing.

---

[22] *See United States v. Frazier*, 283 F.3d 1242, 1245 (11th Cir. 2002) ("Were we to hold that Rule 32.1 incorporates all of the provisions of Rule 32, the sentencing court would not only have to give the defendant a right to allocution, it would have to require presentence investigation reports along with all of the other demands of the rule.").

[23] *See* Fed. R. Crim. P. 32.1, Committee Notes on Rules — 2005 Amendment (explaining that the amendments to Rule 32.1(b) were "intended to address a gap" in the rule and to explicitly recognize the "importance of allocution . . . at Rule 32.1(b)(2) revocation hearings").

Rule 32 gives only four parties an explicit right to speak at sentencing: the defendant's attorney, the defendant, the Government, and any victims who may be present.[24] Other Courts of Appeals to have confronted the question of whether Rule 32 admits other character witnesses an opportunity to speak at sentencing has concluded that it does not, and we agree.[25] To allow such testimony would potentially result in a mini-trial of the defendant's character following the trial of his guilt.

---

[24] *See* Fed. R. Crim. P. 32(i)(4)(A), (B).

[25] *See e.g.*, *United States v. Contreras-Delgado*, 913 F.3d 232, 240 (1st Cir. 2019) ("[W]hile a defendant enjoys a right to due process at sentencing and the right to speak or present any information to mitigate the sentence, a defendant has no right to insist on calling witnesses on his behalf.") (internal citations and quotation marks omitted); *United States v. Cunningham*, 883 F.3d 690, 699 (7th Cir. 2018) (holding that Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) does not establish a right to call witnesses in mitigation for any purpose); *United States v. Cruzado-Laureano*, 527 F.3d 231, 238 (1st Cir. 2008) ("Federal Rule of Criminal Procedure 32 does not give defendants the right to call witnesses in their behalf at sentencing. The rule only requires the court to allow the defendant and his attorney to speak."); *United States v. Claudio*, 44 F.3d 10, 16 (1st Cir. 1995) ("[T]here is no automatic right to present live testimony at sentencing."); *United States v. Heller*, 797 F.2d 41, 43 (1st Cir. 1986) ("Although the defendant must be given the chance to inform the court of any mitigating circumstances, he does not have the right to have others testify for him at sentencing."); *United States v. Jackson*, 700 F.2d 181, 191 (5th Cir. 1983) ("The defendant must be given the chance to inform the court of any mitigating circumstances, but we see little advantage to be gained by allowing the defendant to have others testify for him at sentencing. In fact, such a judicial extension of the right of allocution would amount to a trial of the defendant's character following the trial of his guilt. We refuse to allow that extension.").

Moreover, the text of Rule 32.1(b)(2)(E) entitles the defendant to "present any *information* in mitigation" (emphasis added); it does not give him the right to dictate the *means* by which such information is presented. That language clearly distinguishes the right to present information from the supervisee's opportunity to "make a statement," *i.e.*, to speak, at a hearing. The District Court here did not prevent Degroate from including letters from family members (including his mother) or others as part of his written sentencing submission to the District Court, or from having his attorney present any information that he or his mother wanted conveyed to the court.

We identify no compelling reason to interpret the right to allocution at a post-conviction sentencing hearing more broadly than the right to allocution at a revocation hearing. In sum, we conclude that a supervisee does not have the right to expand allocution by presenting mitigation witnesses at a revocation hearing, and that the District Court did not err, much less plainly err, by denying Degroate's request to have his mother speak at his revocation hearing.[26]

---

[26] Of course, this holding does not preclude a district court from granting a defendant's request to call mitigation witnesses. We merely clarify that the defendant is not entitled to call mitigation witnesses as of right. Accordingly, the denial of such requests is not error.

## 2. Whether the District Court Impermissibly Delegated its Judicial Authority to the Probation Office in Imposing a Curfew as a Special Condition of Supervised Release

Degroate next argues that his curfew violation was not a permissible basis for revoking his supervised release because the curfew condition was imposed unlawfully in the first place. Specifically, Degroate contends that the District Court unlawfully delegated its judicial authority to the Probation Office when it imposed a special condition of supervised release requiring that Degroate "comply with a curfew commencing on a date and under conditions to be set by the probation officer."[27] Degroate did not challenge this curfew condition when it was imposed at his first revocation hearing on October 10, 2017, nor did he challenge this condition when he was first charged with violating his curfew by associating with a known felon at a strip club, past his curfew. Finally, Degroate did not challenge the lawfulness of the curfew condition at

---

[27] App. 107. There is no significant variation between the District Court's written judgment and its oral pronouncement of this condition at the October 10, 2017 revocation hearing: "You shall comply with a curfew commencing on a date and under conditions to be set by the probation officer." *Id.* at 100. *See generally United States v. Rosario*, 386 F.3d 166, 168 (2d Cir. 2004) (reciting the general rule that "in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls").

16

his final revocation hearing on July 20, 2018. Thus, because Degroate has forfeited this argument, we review for plain error.[28]

It is well-established that "a district court may not delegate to the Probation [Office] decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion."[29] A district court may, however, delegate to the Probation Office "decisionmaking authority over certain minor details of supervised release."[30]

In deciding whether a district court has unlawfully delegated its judicial authority, we focus on the language employed by the district court. Where a district court has unequivocally mandated or authorized (based on future contingencies)[31] a restriction on the releasee's liberty, we will not disturb the special condition of supervised release. Where, however, the district court has left to a probation officer the ultimate decision of whether to restrict the

---

[28] *United States v. Brown*, 843 F.3d 74, 81 (2d Cir. 2016) ("If a party's failure to object is simply a matter of oversight, then such oversight qualifies as a correctable forfeiture. If a party forfeits an argument, we review for plain error." (internal quotation marks, alterations, and citation omitted)).

[29] *Matta*, 777 F.3d at 122; *accord United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001).

[30] *Matta*, 777 F.3d at 122.

[31] *See United States v. Young*, 910 F.3d 665, 671 (2d Cir. 2018) (upholding a special condition authorizing treatment if indicated by subsequent testing and evaluation).

defendant's liberty, we must vacate the condition of supervised release as improvidently imposed.

Here, the District Court unambiguously authorized a restriction on Degroate's liberty—"You must comply with a curfew"[32]—and left to the Probation Office's discretion authority to decide such details as the curfew's start date and nightly duration.[33] In short, the District Court did not unlawfully delegate its judicial authority to the Probation Office by allowing it to decide the days and precise timing of the mandatory curfew.

Notwithstanding this lawful delegation of decisionmaking authority to the Probation Office, it is possible, as Degroate suggests, that the Probation Office exceeded its delegated authority by imposing a total "lock-down" from June 30 to July 1, 2018. As discussed above, Degroate twice violated this lock-down by traveling to the Family Dollar Store and by sitting on his back porch. Assuming, *arguendo*, that the Probation Office exceeded its delegated supervisory authority by confining Degroate to his residence for an entire weekend, then arguably the District Court should not have considered his lock-down violations as grounds for revoking his supervised release.

---

[32] App. 107.

[33] *Contra United States v. Levy*, 738 F. App'x 724 (2d Cir. 2018) (non-precedential summary order) (striking the following condition: "They [(the Probation Office)] tell you have to stay home at a certain hour or curfew, you have to obey.").

18

Upon review of the record, it appears that Degroate's lock-down violations did not "affect the outcome"[34] of the District Court's hearing. First, the lock-down violations were just two of several violations that the District Court considered at the July 20, 2018 revocation hearing. Indeed, Degroate admitted to, *inter alia*, tampering with his electronic monitoring device in violation of the condition that he submit to electronic monitoring.[35] He also admitted to violating his curfew by patronizing a strip club with a convicted felon at 1:53 a.m. Based on the revocation hearing transcript, the District Court appeared to focus on the totality of Degroate's contemptuous conduct, and not on any individual violation. Second, the District Court actually *agreed* with Degroate's counsel that the lock-down violations were not particularly brazen:

> Counsel: [I]t's worth noting that during this period of time he was living in a house that did not have any A.C. and at a time when it was very, very hot. It was in the middle of a pretty significant heat spell.

---

[34] *Boyland*, 862 F.3d at 288 (internal quotation marks omitted).

[35] On June 6, 2018, upon consent of Degroate and the Probation Office, the District Court modified Degroate's conditions of supervised release to require electronic monitoring in order to monitor Degroate's compliance with the curfew requirement. Degroate does not challenge the electronic monitoring component of his modified curfew condition on appeal.

Court: That is worth noting. I agree with you.[36]

Finally, the Government never so much as mentioned the lock-down violations at the July 20, 2018 hearing. Instead, it focused on Degroate's curfew violation (*i.e.*, his patronage of a strip a club at 1:53 a.m.) and his "literally tak[ing] his screwdriver to that electronic monitoring device and remov[ing] it from his person."[37]

In sum, absent any indication that the District Court paid any heed to the relatively trivial lock-down violations, such error cannot be said to have affected the outcome of the proceedings.

### C.    Substantive Reasonableness

Finally, Degroate argues that his sentence is substantively unreasonable because the District Court focused predominantly on his perceived dangerousness and failed to give adequate weight to certain mitigating circumstances, such as his personal history and characteristics. He further contends that the District Court's failure to depart horizontally to a lower criminal history category under the United States Sentencing Guidelines ("Guidelines") rendered his sentence substantively unreasonable.

---

[36] App. 123.

[37] *Id.* at 127.

20

In reviewing a sentence for substantive unreasonableness, we "do not substitute our own judgment for that of the district judge, nor will we second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor."[38] In discharging its duty to consider aggravating and mitigating factors under 18 U.S.C. § 3583(e),[39] a district court need not utter "robotic incantations" or discuss each factor individually.[40] Nor is a district court forbidden from considering a supervisee's character, including his perceived dangerous, at a revocation hearing. Indeed, we have repeatedly recognized that while the primary purpose of a revocation hearing is to "sanction primarily the defendant's breach of trust," a district court may take into account, "to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."[41]

---

[38] *United States v. Romano*, 794 F.3d 317, 339 (2d Cir. 2015) (internal quotation marks omitted).

[39] Section 3583(e) provides that "[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release . . . ." 18 U.S.C. § 3583(e)(3).

[40] *See United States v. Villafuerte*, 502 F.3d 204, 210 (2d Cir. 2007) (internal quotation marks omitted).

[41] *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007) (emphasis omitted) (quoting U.S.S.G. ch. 7, pt. A. intro. cmt. 3(b)).

Degroate identifies three mitigating factors that the District Court allegedly failed to appreciate: (1) his violations were "non-aggravating, run-of-the-mill violations"[42] that did not involve new criminal conduct; (2) despite growing up in a gang and drug-infested neighborhood, he managed to get a job and refrain from drug and alcohol use while on supervised release; and (3) he had "begun to make a plan for future success."[43]

Degroate's arguments are belied by the sentencing transcript and the written Statement of Reasons for Revocation. First, the sentencing transcript demonstrates the District Court's express consideration of the above-listed mitigating factors. As the District Court acknowledged at the revocation hearing:

> I agree with what your lawyer said about a lot. I mean, there's no doubt about it. You didn't have an upbringing that was free from gang association, you certainly had a narcotics problem. We went through all of that when I sentenced you originally and the Court is cognizant of that and I agree with your lawyer. It's not easy for someone with

---

[42] Appellant Br. 27.

[43] Appellant Br. 28.

those affiliations to act like a normal citizen
. . . .[44]

The District Court also acknowledged Degroate's future plans, stating: "I want you to do what you say you're trying to do, that is, to do the right thing. I agree a thousand percent with what your counsel said about getting out of Schenectady . . . . I think it's a really good move if you can go someplace else and try to start over again with the help of the probation department. . . ."[45]

Notwithstanding these mitigating factors, the District Court ultimately concluded that a term of incarceration was necessary in light of Degroate's repeated breaches of the court's trust and the failure of past sanctions to deter further violations of the terms of supervision:

> So I'm going to have to give you some time so that you can think about what you have to do when you do get out again and not be contemptuous of these conditions. They're not to hurt you personally. They're to make you stronger by complying with them. But when you don't comply with them, you're saying, "Screw you, man. I'm going to do what I want to do." That's what you're

---

[44] App. 129–30.

[45] *Id.* at 130–31.

saying to me and that ain't going to happen. I can tell you that right now. . . .

I have to underline the seriousness of the violations; you can call them technical or you can call them substantive. I don't care what you called them. They're willful violations to say you don't want to be on supervised release. You want to do what you want to do when you want to do it and that just isn't going to work.[46]

Degroate further argues that, in considering his perceived dangerousness, the District Court impermissibly relied on extra-record social media posts. Upon review of the record, it is clear that this extra-record material did not materially affect the sentence that the District Court ultimately imposed. Although Judge McAvoy initially expressed concern about some vulgar and "sexually suggestive comments" that Degroate made on Facebook regarding a female probation officer, and acknowledged that the matter was relevant to his thinking, he clarified that the sentence was imposed because of the violations of supervised release rather than any conduct on social media:

[Degroate's] punishment is based on the violations of counts one and two. The Court

---

[46] *Id.*

24

> is entitled to consider all matters that comes before it in the sentencing process. His sentence was not enhanced by the Facebook post but certainly was something that I kept in mind.[47]

The sentence imposed was thus a justified response to the two significant violations of supervised release Degroate admitted to committing.

Finally, while Degroate does not contest his Guidelines Criminal History Category of II, he submits that the District Court's failure to grant him a horizontal departure to Category I resulted in a sentence that was substantively unreasonable. We generally will not review a district court's refusal to grant a Guidelines departure unless the "sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal."[48] Degroate identifies nothing in the record to indicate that either concern is implicated in this case—that is, that the District Court misapprehended its authority to depart or that Degroate's sentence was otherwise illegal.

Furthermore, the fact that the District Court did depart horizontally at Degroate's post-conviction sentencing is of no moment,

---

[47] *Id.* at 135; *see also* Dist. Ct. Dkt. No. 407 (Court Only) (Statement of Reasons for Revocation) ("The Court clearly noted that the rationale for the 18 month imprisonment sentence is due to the violation conduct in violation's [sic] #1 and #2 and not due to the discovery of the Facebook posts.").

[48] *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005).

since a prior departure does not entitle Degroate to a departure at any subsequent sentencing. In fact, the Guidelines commentary suggests that a prior departure resulting in a below-guideline sentence may actually be a reason to depart *upward* at a subsequent revocation hearing: "Where the original sentence was the result of a downward departure . . . that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted [at a revocation hearing]."[49]

In sum, Degroate's above-guideline sentence was not substantively unreasonable under the circumstances of this case.

### III. CONCLUSION

To summarize, we hold as follows:

(1) A supervisee does not have the right to expand allocution by presenting mitigation witnesses at a revocation hearing.

(2) The District Court did not unlawfully delegate its judicial authority to the Probation Office when it imposed a special condition of supervised release that required Degroate to "comply with a curfew commencing on a date and under the conditions to be set by the probation officer."

(3) Even if the Probation Office exceeded its lawfully delegated supervisory authority by unilaterally imposing a two-day lock-down, Degroate has failed to demonstrate that his

---

[49] U.S.S.G. § 7B1.4 cmt. n.4.

26

violations of this lock-down condition affected the outcome of his revocation hearing.

(4) Degroate's sentence is not substantively unreasonable.

For the foregoing reasons, we **AFFIRM** the District Court's July 27, 2018 judgment.