*United States v. Villafane-Lozada*

# United States Court of Appeals
# For the Second Circuit

August Term 2019

Submitted: June 3, 2020
Decided: September 3, 2020

No. 19-2098

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

DANIEL VILLAFANE-LOZADA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of New York
No. 18-cr-140, Richard J. Arcara, *Judge*.

Before:    LIVINGSTON, SULLIVAN, AND PARK, *Circuit Judges*.

Defendant, who is currently serving a sentence for possession of child pornography and will not be released from custody for another six years, challenges a condition of his supervised release requiring that he submit to verification testing designed to ensure that he is complying with the other conditions of his term of supervision. While he does not contest the general need for such a condition, the defendant argues that the district court abused its discretion by permitting the probation officer to test him using computerized voice stress analysis – a technology that the defendant claims is unreliable – and by

giving the probation officer unwarranted discretion over which verification testing device to employ. We dismiss the defendant's first challenge as unripe because it turns on a speculative assessment of what the contested technology will look like in six years. With respect to the defendant's challenge to the delegation of discretion to the probation officer, we find that permitting the probation officer to choose among verification testing tools is no more significant than allowing probation to select among different outpatient therapy options. Accordingly, we **DISMISS** the defendant's challenge to computerized voice stress analysis and **AFFIRM** the judgment of the district court (Arcara, *J.*) with respect to its determination that the probation officer can select which verification testing tool to use. We dismiss the defendant's challenges to other conditions of his supervised release in a summary order issued simultaneously with this opinion.

APPEAL DISMISSED IN PART AND JUDGMENT AFFIRMED IN PART.

Marianne Mariano, Federal Public Defender's Office for the Western District of New York, Buffalo, NY, *for Defendant-Appellant*.

Katherine A. Gregory, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

In six years, Defendant Daniel Villafane-Lozada will likely be released from prison, after which he will begin a decade of supervised release. During that time, he will be subject to a variety of conditions, one of which is that he submit to truth verification testing (for example, a polygraph) several times a year – a condition routinely imposed on defendants convicted of sex offenses to deter future

misconduct. *See, e.g.*, *United States v. Boles*, 914 F.3d 95, 112 (2d Cir. 2019). While he has no general objection to undergoing such testing, Villafane-Lozada argues that the condition is unlawful because it permits his probation officer to use a particular verification testing technology, computerized voice stress analysis, that Villafane-Lozada believes is not sufficiently reliable and because it improperly delegates to his probation officer the choice of which verification testing device to use.

The first issue is plainly not yet ripe for our consideration because it is fundamentally a question about what the state of technology will look like in six years. But the latter issue is ripe as it raises a purely legal question about the discretionary authority that the district court (Arcara, *J.*) gave to the probation officer. And on the merits, we hold that the district court's delegation was lawful. Permitting the probation officer to choose among verification testing tools is no more significant than allowing him to select among different outpatient therapy options, a choice probation officers are routinely allowed to make.

## I.   Background

The facts of this case are straightforward. In April 2018, following up on a tip, law enforcement officers searched Daniel Villafane-Lozada's home and

3

discovered a memory card that contained dozens of images and videos of child pornography. The government quickly charged Villafane-Lozada, and seven months later, he pleaded guilty, pursuant to a plea agreement, to one count of possessing child pornography involving a prepubescent minor.

On June 26, 2019, the district court principally sentenced Villafane-Lozada to 120 months' imprisonment (slightly below his Guidelines range) and 10 years of supervised release. In setting the terms of his supervision, the district court imposed all thirteen standard conditions and an additional seven special conditions as recommended by the U.S. Probation Office.

One of those special conditions requires that Villafane-Lozada submit to verification testing to help his probation officer determine whether he is complying with the terms of his supervision and to deter any future misconduct:

> [Villafane-Lozada] shall submit to a polygraph, computerized voice stress analyzer, or any other such testing, not to exceed twice in a calendar year, in addition [to] two retests per year as needed. That testing may include examination using a polygraph, computerized voice stress analyzer[,] or similar device to obtain information necessary for supervision of the case monitoring and treatment.

J. App'x at 86. Villafane-Lozada objected, not to the condition itself, but to the court's inclusion of computerized voice stress analysis technology as a permissible

4

tool and to the Probation Office's ability to employ "any similar [verification testing] device" of its choosing. *Id.* at 91. Though the district court noted the objections for the record, it did not modify the condition. Villafane-Lozada now appeals that judgment.[1]

Notably, Villafane-Lozada is currently in custody. He is not projected to begin his term of supervision until November 2026.

## II.  Discussion

Because "[a] district court retains wide latitude in imposing conditions of supervised release," we generally review such conditions only "for abuse of discretion." *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). But as "any error of law necessarily constitutes [such] an abuse," we consider legal issues *de novo*. *Id.* at 75.

## A.  Ripeness

Before assessing the propriety of a condition of supervision, we must assure ourselves that the defendant's challenge raises issues that are ripe for our consideration. The ripeness doctrine springs from both Article III limitations on

---

[1] Villafane-Lozada also appeals two other conditions of supervision imposed by the district court: a risk notification condition and a computer monitoring condition. We address those arguments in a simultaneously issued summary order.

5

judicial power and prudential concerns about avoiding premature judicial interference in an evolving situation. *See United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020); *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004). A case is ripe only when we can confidently say that "(1) the issues are fit for judicial consideration[] and (2) withholding of consideration will cause substantial hardship to the parties." *Balon*, 384 F.3d at 46 (internal quotation marks omitted); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). So, to ensure that we are not wading into an "abstract disagreement[]" about the verification testing condition, *Balon*, 384 F.3d at 46 (internal quotation marks omitted), we begin by considering whether Villafane-Lozada's challenges are ripe.

Villafane-Lozada objected to the verification testing condition on the grounds that it (i) permits the use of computerized voice stress analysis, which he says is not scientifically proven to be reliable, and (ii) improperly delegates to the probation officer the choice of which verification testing technology to employ, whether it be polygraph, computerized voice stress analysis, or something else entirely. Though both challenges concern the same condition of supervision, the ripeness of each may differ depending on the issues they raise. *See, e.g., United*

6

*States v. Johnson*, 446 F.3d 272, 279 (2d Cir. 2006) (identifying a distinction for ripeness purposes between a challenge to "the precise implementation" of a condition and a "general challenge" to that condition (internal quotation marks and emphasis omitted)).

As we recently concluded in *United States v. Birkedahl*, --- F.3d ---, 2020 WL 4963244 (2d Cir. Aug. 25, 2020), whether computerized voice stress analysis is sufficiently reliable to be used by the Probation Office is not ripe for our review. That is because the resolution of that issue hinges on what the state of computerized voice stress analysis technology will be when Villafane-Lozada begins his term of supervision in six years. *See id.* at *4. Right now, we can only speculate about that fact. *See id.* ("[G]iven that computer technology is often rapidly changing, we are unable to predict whether the [computerized voice stress analyzer's] use will render the verification testing condition not reasonably related or necessary to the sentencing goals relevant to [the defendant] at the time it may be imposed"). And since Villafane-Lozada is not currently subject to the condition, he will not suffer any serious hardship by having to wait six years before renewing his challenge. *See id* at *5 ("[S]ince [the defendant] can challenge the [computerized voice stress analysis] testing condition at any time while he is

7

on supervised release, he will not be disadvantaged by the decision to forego resolution of this technology issue until the commencement of his supervision."). We therefore dismiss this issue as unripe.

Villafane-Lozada's improper delegation challenge – an issue not addressed in *Birkedahl* – presents a different story. With respect to that issue, Villafane-Lozada is challenging the *already* realized delegation of judicial power to a probation officer, not some hypothetical decision that this delegation might allow in the future. In other words, it is the probation officer's already-granted authority to choose among verification tests, not the particular test that will be chosen, that Villafane-Lozada says is unlawful. "That delegation was either proper or not – and its propriety does not depend on how (or even whether) the probation officer might later choose to wield the delegated power." *United States v. Cabal*, 926 F.3d 687, 696 (10th Cir. 2019). And unlike the condition of supervision we recently considered in *United States v. Traficante*, this delegation has already occurred and is not contingent on future judicial action. *See Traficante*, 966 F.3d at 106–07; *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)).

8

In other words, because the permissibility of the delegation "is a pure question of law," and because the delegation is not conditioned on future events, it "is eminently fit for judicial review." *United States v. Quinones*, 313 F.3d 49, 59 (2d Cir. 2002) (internal quotation marks omitted).

There is also good reason for us not to kick the delegation can down the road. As "the illegality of a condition of supervised release is not a proper ground for modification under" 18 U.S.C. § 3583(e)(2), *United States v. Lussier*, 104 F.3d 32, 34 (2d Cir. 1997); *see also United States v. Myers*, 426 F.3d 117, 123 (2d Cir. 2005) (Sotomayor, *J.*), Villafane-Lozada has a legitimate interest in having this issue resolved now.[2] Otherwise, he would have fewer procedural avenues through which to raise his concerns once his term of supervision begins. Indeed, it is for these reasons that we regularly allow unlawful delegation challenges to proceed even before the defendant has begun his term of supervision. *See, e.g.*, *Boles*, 914 F.3d at 102, 111–12; *United States v. Matta*, 777 F.3d 116, 121–23 (2d Cir. 2015).

---

[2] There is an exception to this rule for "new or unforeseen circumstances," which include, among other things, technological changes. *See Balon*, 384 F.3d at 47 (quoting *Lussier*, 104 F.3d at 36). So even though we dismiss Villafane-Lozada's challenge to computerized voice stress analysis technology as unripe, that does not mean that he cannot later seek to modify that condition under § 3583(e)(2).

9

Villafane-Lozada's delegation challenge is therefore ripe for our review.[3]

## B. Improper Delegation

Of course, the fact that Villafane-Lozada's delegation argument may be ripe does not mean that it has merit. To the contrary, we easily reject Villafane-Lozada's assertion that the "[s]election of an effective verification test is . . . an essential requirement of supervision and may not be delegated." Villafane-Lozada Reply Br. at 5–6.

"The power to impose special conditions of supervised release . . . is vested exclusively in the district court." *Matta*, 777 F.3d at 122. But while a district court may not delegate "authority [that] would make a defendant's liberty itself contingent on a probation officer's exercise of discretion," *United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019) (quoting *Matta*, 777 F.3d at 122), that does not mean that the court must micromanage every facet of a defendant's supervision. Rather, we have long recognized that district courts "may delegate to a probation officer

---

[3] In reaching this conclusion, we realize that another panel arrived at a different result only a year ago. *See United States v. Burdick*, 789 F. App'x 886, 888–89 (2d Cir. 2019) (dismissing a similar delegation challenge as unripe). Although we are not bound by that unpublished and non-precedential ruling, we do not break from that panel's decision lightly. *See L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 123 n.17 (2d Cir. 2016) ("Denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." (internal quotation marks and brackets omitted)). But as this issue presents a purely legal question, and because Villafane-Lozada would suffer at least some hardship were we to postpone our consideration, we are convinced that his delegation challenge is ripe and so hold in this opinion.

10

decisionmaking authority over certain minor details of supervised release." *Matta*, 777 F.3d at 122; *United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001).

So, for instance, whether a defendant is required to attend substance abuse treatment or mental health counseling *at all* must be decided by the district court, since the court alone can impose such a condition. *See Peterson*, 248 F.3d at 85. Likewise, the district court must choose between inpatient and outpatient therapy as "the difference between the two programs might be said to be the difference between liberty and the loss of liberty." *Matta*, 777 F.3d at 122. But decisions about the details of such treatment, including the provider and the treatment schedule, can be left to the probation officer, since neither of those choices materially limits the defendant's freedom any more than the court's order already does. *See United States v. Young*, 910 F.3d 665, 671–72 (2d Cir. 2018); *Peterson*, 248 F.3d at 85.

Here, the district court mandated that Villafane-Lozada must undergo verification testing – a condition that Villafane-Lozada did not challenge at sentencing or on appeal. The only decision that was left to the probation officer was the *type* of testing that would be employed to assess Villafane-Lozada's veracity. That determination is clearly analogous to the choice between various outpatient therapy options, which is routinely delegated to probation officers. *See*

11

*Young*, 910 F.3d at 671–72; *Matta*, 777 F.3d at 122. Indeed, just like different outpatient therapy options, the various verification tests may involve diverse methods, but all are geared to achieve the same result.

Perhaps recognizing this fact, Villafane-Lozada focuses on the open-ended nature of the delegation, arguing that it will allow the probation officer to subject him to any number of invasive testing technologies, some of which he fears could restrict his liberty more than others. We do not share that concern.

To start, there is no indication in the record before us that a verification test exists today that is qualitatively more restrictive to the test-taker's liberty than a polygraph or computerized voice stress analyzer.[4] Indeed, Villafane-Lozada is unable to identify an actual testing device currently in use that might fit this description. Instead, he simply speculates about all sorts of verification testing tools that *could* be invented or come into vogue in the future. *See* Villafane-Lozada Reply Br. at 6 (worrying that "electroshock therapy [could be] deemed an effective method of divining the truth"). But even if Villafane-Lozada's fears are realized, that would not render the condition unlawful.

---

[4] Nor is there any indication that a material difference exists between a polygraph and a computerized voice stress analyzer for these purposes.

The condition imposed by the district court cannot reasonably be construed to authorize the use of a verification test that is materially more restrictive on Villafane-Lozada's liberty than the restriction that accompanies a polygraph or a computerized voice stress analyzer. *See Young*, 910 F.3d at 671 ("In light of *Matta*, . . . we construe this authorization to exclude the imposition of inpatient treatment."). After all, the district court stated specifically that the probation officer must select a testing tool "similar" to those two particular devices. J. App'x at 86. So no matter what verification testing tools come into existence in the future, Villafane-Lozada's liberty will not be subject to the whims of his supervising probation officer.

To be sure, it is always possible that a probation officer might find some way to abuse his delegated authority. But that possibility does not render an otherwise proper delegation unlawful. *See Degroate*, 940 F.3d at 177; *Young*, 910 F.3d at 671 n.26. And if the probation officer does overstep his authority, Villafane-Lozada may, at that time, seek recourse before the sentencing court. *See Young*, 910 F.3d at 671 n.26 (noting that in cases of "unreasonableness on the part of the probation officer, the [defendant] should have recourse to the sentencing court when a

condition needs clarification or modification" (quoting Fed. R. Crim. P. 32.1 advisory committee's notes (1979))).

### III.    Conclusion

For the foregoing reasons, we **DISMISS** as unripe Villafane-Lozada's challenge to the use of computerized voice stress analysis technology and **AFFIRM** that portion of the district court's judgment that delegates to the probation officer the choice of which verification testing device to employ.  We resolve Villafane-Lozada's challenges to other conditions of his term of supervision in a simultaneously issued summary order.