21-2768-cr
*United States v. Randolph*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of October, two thousand twenty-five.

PRESENT:
>JOHN M. WALKER, JR.,
>DENNIS JACOBS,
>JOSEPH F. BIANCO,
>>*Circuit Judges.*

---

UNITED STATES OF AMERICA,

>*Appellee*,

>v.                                                                             21-2768-cr

MARVIN WILLIAMS, CLIPHAS BELFON, AKA CLIFF, COLIN BURNETT, AKA GREG, NICHOLAS DIXON, AKA ROBBIE, BESAR ISMAILI, STEVEN KLEIN, ROBERT PINSKY, ANTONIO SANTIAGO, CHARLES WALTON,

>*Defendants,*

LASHAUMBA RANDOLPH,

>*Defendant-Appellant*.

---

FOR APPELLEE:

DAVID R. FELTON (Emily Deininger and Stephanie Simon *on the brief*), Assistant United States Attorneys, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:

JEREMIAH DONOVAN, Old Saybrook, Connecticut.

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on October 21, 2021, is **AFFIRMED**.

Defendant-Appellant Lashaumba Randolph appeals from the district court's judgment of conviction following his guilty plea to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The district court sentenced Randolph principally to 60 months' imprisonment, to be followed by three years' supervised release. On appeal, Randolph challenges the mental health treatment and search conditions that were imposed by the district court as special conditions of supervised release. Randolph also contends that the district court procedurally erred in failing to orally pronounce the twelve standard conditions of supervised release that were imposed at sentencing and reflected in the written judgment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.      Challenges to the Special Conditions

We review a district court's decision to impose special conditions of supervised release for abuse of discretion. *See United States v. Kunz*, 68 F.4th 748, 758 (2d Cir. 2023). However, where a defendant fails to object to the challenged condition below, we review the district court's decision

2

for plain error.  *See United States v. Dupes*, 513 F.3d 338, 343 & n.2 (2d Cir. 2008).  For there to be plain error, a defendant must show that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) (internal quotation marks and citation omitted).  Moreover, "[t]he law is well established that if, as a tactical matter, a party raises no objection to a purported error, such inaction constitutes a true waiver which will negate even plain error review."  *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also United States v. Yu-Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995) ("[F]orfeiture does not preclude appellate consideration of a claim in the presence of plain error, whereas waiver necessarily extinguishes the claim altogether." (internal quotation marks and citation omitted)).

"District courts possess broad discretion in imposing conditions of supervised release." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018).  A district court may impose special conditions if they are "reasonably related" to:  "(A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  U.S.S.G. § 5D1.3(b)(1); *accord* 18 U.S.C. §§ 3553(a), 3583(d)(1).  "[A] condition may be imposed if it is reasonably related to any one or more of the specified factors."  *United States v. Abrar*, 58 F.3d 43, 46 (2d Cir. 1995).  In addition, a special condition must "involve no greater deprivation of liberty than is reasonably necessary" for those purposes, and it must be "consistent with any

pertinent policy statements issued by the Sentencing Commission." U.S.S.G. § 5D1.3(b)(2); *accord* 18 U.S.C. § 3583(d)(2)–(3); *United States v. Myers*, 426 F.3d 117, 123–25 (2d Cir. 2005). Moreover, when determining whether to impose special conditions, "[a] district court is required to make an individualized assessment . . . and to state on the record the reason for imposing it; the failure to do so is error." *Betts*, 886 F.3d at 202. However, even when the district court does not provide such an explanation, the condition at issue can be upheld "if the district court's reasoning is self-evident in the record." *Id*. (internal quotation marks and citation omitted).

## A. Mental Health Treatment Condition

Randolph argues that the district court erred in imposing mental health treatment as a special condition of supervised release because: (1) it did not explain its reasoning and the imposition of mental health treatment condition, including the requirement that he take prescribed medications unless otherwise instructed by the mental health treatment provider, is not supported by the record; and (2) it improperly delegated the selection of the particular mental health treatment program to a probation officer.[1]

As a threshold matter, we conclude that Randolph has waived any challenge to the mental health treatment condition. In his written sentencing submission, Randolph affirmatively requested the imposition of the mental health treatment condition and suggested that "[a] just punishment includes a balance of prison and supervision so we can get offenders into treatment while they get back to their families and get back to work." App'x at 44. Moreover, during the sentencing proceeding, Randolph's counsel discussed the importance of mental health treatment,

---

[1] The mental health treatment special condition provides: "You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider." App'x at 83.

4

expressed his belief that "[Randolph] could benefit from psychiatric counseling," and then requested a "substantial variance" from the advisory range of 51 to 63 months' imprisonment under the United States Sentencing Guidelines. *Id.* at 141 (emphasizing that "had [Randolph] had one program to maybe help him, then maybe we wouldn't be here, []maybe this could [have] all be[en] avoided"). Furthermore, after the district court imposed the mental health treatment condition, Randolph did not object to the condition. On this record, we conclude that Randolph's "active[] solicit[ation]" of the mental health treatment condition was a clear tactical decision made in an effort to "procure a perceived sentencing benefit," namely, a shorter term of imprisonment, and thus, constitutes a true waiver that negates even plain error review. *Quinones*, 511 F.3d at 321; *see also United States v. Rodriguez*, 775 F.3d 533, 537–38 (2d Cir. 2014) (holding that "[the defendant was] barred from challenging this condition on appeal as he affirmatively and repeatedly requested that the [d]istrict [c]ourt impose residential drug treatment as a special condition of supervised release, and he did not object when the [d]istrict [c]ourt granted his request").

In any event, even in the absence of true waiver, we conclude that the district court committed no plain error in imposing that condition.[2] The record contained substantial evidence of Randolph's traumatic, abusive childhood and its ongoing psychological effects. Indeed, in his sentencing submission, Randolph emphasized that he suffered from "lifelong, emotional trauma," App'x at 45, and, at sentencing, defense counsel further explained that "when people have a childhood like [Randolph had], things stick with them," and thus, "[Randolph] could benefit from psychiatric counseling," *id.* at 140–41. Based on this record, including Randolph's criminal

---

[2] Although Randolph does not dispute that he failed to raise any objection at sentencing, he contends that we should apply a relaxed plain error standard of review, *see United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002), which would require him to demonstrate only "that there is an error, and that the error is clear and obvious," *United States v. Haverkamp*, 958 F.3d 145, 150 (2d Cir. 2020). We need not decide this issue because, even if we were to apply the more relaxed standard in this context, our decision to affirm the district court's judgment would remain unchanged for the reasons set forth *infra*.

history, the district court concluded that "in many ways, [Randolph has] surmounted the bad experience of his childhood, but in other ways, he clearly has not," and therefore "he could benefit from assistance from a mental health professional." *Id*. at 153. That reasoning was more than sufficient to explain the need for the special condition, which was self-evident from defense counsel's statements and the record, and was well within the district court's discretion.

Randolph argues that the district court improperly delegated the details of the particular treatment program to the probation officer. However, the power to impose special conditions is vested exclusively in the district court, *see* 18 U.S.C. § 3583, we have explained that "a district court may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015); *see also United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (per curiam) ("If [the defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer."). However, a district court may "delegate to a probation officer decisionmaking authority over certain minor details of supervised release—for example, the selection of a therapy provider or treatment schedule." *Matta*, 777 F.3d at 122 (citation omitted).

Here, the district court did not delegate to the probation officer the decision as to whether Randolph was required to attend mental health treatment but rather mandated such treatment as a special condition of supervised release. Although the district court authorized the probation officer to select the particular treatment program, that decisionmaking authority does not make "[Randolph's] liberty itself contingent on a probation officer's exercise of discretion." *Id*.; *see also United States v. Young*, 910 F.3d 665, 671–72 (2d Cir. 2018) (holding that there is no

6

impermissible delegation where the condition "clearly and unambiguously orders [the defendant's] participation in mental health treatment" and "leaves to the Probation Office's discretion only the approval of details of such treatment" (internal quotation marks and citations omitted)). Thus, it was not plain error for the district court to delegate to the probation officer decisionmaking with respect to the details of the mental health treatment program.[3]

## B. Third-Party Notification in Search Condition

Although Randolph does not challenge the imposition of the search condition itself, he contends that the district court erred in imposing the third-party notification subcondition—that is, the subcondition requiring him to "warn any other occupants that the premises may be subject to searches pursuant to [the search] condition" (the "search subcondition").[4] App'x at 83. As with the mental health treatment condition, Randolph argues that: (1) the district court made no

---

[3] We similarly conclude that the reasons for the imposition of the subcondition that he "continue to take any prescribed medications unless otherwise instructed by the health care provider" are self-evident from the record. *See United States v. Woods*, No. 23-6012, 2025 WL 2586699, at *2 (2d Cir. Sept. 8, 2025) (summary order) (affirming this medication subcondition as part of mental health treatment condition "[b]ecause the condition that [the defendant] must participate in an outpatient mental health treatment program plainly includes the possibility that such mandatory treatment will involve the prescription of medication"). Moreover, contrary to Randolph's suggestion, the subcondition is not impermissibly vague and does not improperly delegate any decisionmaking to the probation officer; rather, such discretion lies with the treatment provider. Finally, any suggestion by Randolph that the subcondition constitutes forced medication is not ripe because it is entirely unclear whether he will be prescribed any medications as part of his treatment while on supervised release and, if so, whether he will object to any such medications. *See United States v. Villafane-Lozada*, 973 F.3d 147, 151 (2d Cir. 2020) (holding that challenge to special condition was unripe where we can only "speculate" as to the what the nature of the objection may be). As the government concedes, "[i]f, once he is on supervised release, Randolph is prescribed medications by his mental health treatment provider and objects to taking those medications, Randolph will have every right to present his objection to the court." Appellee's Br. at 35 (internal quotation marks and citation omitted).

[4] The search special condition provides as follows: "You shall submit your person, and any property, residence, vehicle, papers, effects, computer, other electronic communication or date storage devices, cloud storage or media to search by any United States Probation Officer, with the assistance of law enforcement if needed. The search is to be conducted upon reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct by you. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner." App'x at 83.

individualized assessment as to the need for the search subcondition, and (2) the search subcondition is vague and constitutes an improper delegation of authority to the probation officer. Because he failed to make these objections at sentencing, we review for plain error.

The reasons for imposing the search subcondition are "self-evident in the record." *Betts*, 886 F.3d at 202 (internal quotation marks and citation omitted). In particular, Randolph participated in a conspiracy involving the possession of fraudulent VIN stickers and fake car titles, and used electronic devices in furtherance of the offense, including using such devices to discuss and send images regarding the fake documents. Randolph also had a substantial criminal history, including the commission of new crimes while on pretrial release in this case. Thus, the search condition, including the third-party notification subcondition, is reasonably related to the nature and circumstances of the offense, his history and characteristics, and the need for deterrence and to protect the public from further crimes by Randolph. *See* U.S.S.G. § 5D1.3(b)(1). Furthermore, as the government correctly notes, this particular subcondition facilitates these goals by, among other things, minimizing the risk that the probation officer could be unduly hindered during any search by third parties who were unaware of the search condition. We also conclude that the search subcondition is not vague because it "is reasonably read to require notice only to others occupying his 'house,' 'residence,' or 'vehicle' and thus 'puts an ordinary person on notice of the prohibited conduct.'"[5] *United States v. Rakhmatov*, No. 21-151, 2022 WL 16984536, at *3 (2d Cir. Nov. 17, 2022) (summary order) (alteration adopted) (quoting *United States v. Carlineo*, 998 F.3d 533, 536 (2d Cir. 2021)). Moreover, given that the search subcondition is mandatory and directs Randolph to make that notification to other occupants of the premises, there is no impermissible delegation

---

[5] Although Randolph also suggests that this search subcondition may become unduly burdensome at some point because of the number of people he may need to advise of the potential for a search, any such argument is unripe and can be challenged on this ground if he believes the number of notifications has become burdensome once he is on supervised release. *See Villafane-Lozada*, 973 F.3d at 150.

8

of any decisionmaking authority to the probation officer with respect to this requirement.

In sum, we conclude that Randolph has failed to demonstrate any error, plain or otherwise, in the district court's imposition of the search subcondition.

## II.     Oral Pronouncement of the Standard Conditions

In a supplemental brief, Randolph asserts that the district court erred in failing to orally pronounce the twelve standard conditions of supervised release that were contained in the written judgment, as required by our recent decision in *United States v. Maiorana*, -- F. 4th --, 2025 WL 2471027 (2d Cir. Aug. 28, 2025) (en banc). We are unpersuaded.

To be sure, in *Maiorana*, we held that "a sentencing court intending to impose non-mandatory conditions of supervised release, including the 'standard' conditions described in § 5D1.3(c), must notify the defendant during the sentencing proceeding; if the conditions are not pronounced, they may not later be added to the written judgment." *Id*. at *6. However, we also made clear that "[a] sentencing court need not read the full text of every condition on the record," but rather "it must, at the very least, as part of the pronouncement of the sentence in the presence of the defendant during the sentencing proceeding, expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the [Presentence Report], the [Sentencing] Guidelines, or a notice adopted by the court." *Id*.

Here, the twelve standard conditions imposed by the district court were contained in the Presentence Report and, at sentencing, the district court expressly adopted and specifically incorporated them by stating that Randolph shall "comply with the standard conditions of supervision 1 through 12." App'x at 156. Therefore, the district court satisfied the requirements set forth in *Maiorana* and was not required to read the full text of those conditions into the record.

\*          \*          \*

We have considered Randolph's remaining arguments on appeal and conclude that they

are without merit.[6]  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6]  To the extent that Randolph suggests that a remand is required because of any minor variations in the language of the conditions between the oral sentence and the written judgment, we disagree.  Where "there is no material variance" between an oral sentence and a written judgment, a written judgment "may properly serve the function of resolving ambiguities" in an oral sentence.  *United States v. Moyles*, 724 F.2d 29, 30 (2d Cir. 1983).  As we recently explained, "*Maiorana* does not disturb this general rule," *Woods*, 2025 WL 2586699, at \*2 n.1 (summary order), and we conclude that any variance in the language here was immaterial.