*United States v. Harris*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2024

(Submitted: October 25, 2024     Decided: January 14, 2026)

No. 22-2717

_____

UNITED STATES OF AMERICA

*Appellee,*

-v.-

DANIEL HARRIS

*Defendant-Appellant.*

_____

Before:     LIVINGSTON, *Chief Judge*, LEVAL, and NATHAN, *Circuit Judges*.

Defendant-Appellant Daniel Harris ("Harris") appeals from a judgment of conviction entered pursuant to a guilty plea on October 18, 2019, in the United States District Court for the Eastern District of New York (Spatt, *J*.).   Harris was convicted of (1) possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II), and (2) possession of several firearms during and in relation to drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i).   The district court principally imposed a 120-month term of imprisonment followed by five years' supervised release with the Standard

1

Conditions of supervised release included in the U.S. Sentencing Guidelines Manual ("U.S.S.G.") at § 5D1.3(c), as well as four Special Conditions recommended by the Probation Department. Harris's appeal, filed well past the Fed. R. App. P. 4(b) deadline to do so, brings several challenges to both the Standard and Special Conditions imposed. Because we find that the government forfeited its objection to the appeal's untimeliness, we reach the merits. For the reasons set out below, we **REMAND** the case to the district court with instructions to vacate the 13 Standard Conditions as well as Special Conditions two, three, and four. If the district court deems it appropriate to impose those conditions as part of the sentence, it may conduct a resentencing hearing in a manner consistent with the requirements of this opinion. We otherwise **AFFIRM** the judgment of the district court.

FOR APPELLEE: Jo Ann M. Navickas, Michael Maffei, Assistant United States Attorneys *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

FOR DEFENDANT-APPELLANT: Robert J. Boyle, New York, NY, *for* Daniel Harris.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Defendant-Appellant Daniel Harris filed a pro se notice of appeal on September 27, 2022, appealing from a judgment of the United States District Court for the Eastern District of New York (Spatt, *J.*) entered almost three years earlier, on October 18, 2019. Harris's counsel thereafter moved to be relieved pursuant to *Anders v. California*, 386 U.S. 738 (1967), for lack of any substantial issue for

2

appeal, and the government moved for summary affirmance.[1]    Harris was therefore multiple years past the Fed. R. App. P. 4(b) deadline to file his appeal. But the government's response to defense counsel's *Anders* motion to be relieved on unrelated grounds did not raise a Rule 4(b) timeliness objection.    Because we do not consider defenses not raised by the parties, and Rule 4(b)'s time limits are not jurisdictional, we proceeded to conduct the required "full examination of all the proceedings," *Anders*, 386 U.S. at 744, to rule on the motion.    And having found nonfrivolous issues, we did not permit Harris's counsel to be relieved but rather ordered supplemental briefing on the merits.    In its response to defense counsel's briefing, the government—for the first time—objected to the appeal's untimeliness.

Harris argues that the government forfeited its objection by failing to raise it in the course of the adjudication of the *Anders* motion and the motion for summary affirmance.    Given the obvious untimeliness of Harris's notice of appeal, we agree that the government's failure to raise the issue of timeliness in its

---

[1] Fed. R. App. P. 4(d) instructs that Harris's notice of appeal, which was mistakenly sent to the clerk of the Second Circuit rather than the district court, is nevertheless considered filed on the date it was received at the court of appeals—September 27, 2022.

motion for summary affirmance supports an inference of forfeiture. We therefore proceed to address the merits of Harris's appeal. And on the merits, we agree with Harris that the Standard Conditions of supervised release were improperly imposed outside of his presence, and that several of the Special Conditions of supervised release either impermissibly added burdens to the conditions as pronounced at sentencing or constituted an improper delegation of authority to the United States Probation Department ("Probation"). Accordingly, the matter is REMANDED with instructions to vacate the 13 Standard Conditions, as well as Special Conditions 2, 3, and 4, and for further proceedings consistent with this opinion.

**BACKGROUND[2]**

**I.      Criminal Conduct and Subsequent Guilty Plea**

In 2018, Harris sold 12.73 grams of crack cocaine, or "cocaine base," to a confidential informant in three separate controlled buys conducted by the Federal Bureau of Investigation ("FBI") in relation to a drug trafficking investigation in Suffolk County, New York. Based on these sales, FBI agents obtained a search warrant for Harris's residence. The agents executed that warrant on November

---

[2] Citations to "App'x" refer to the appendix submitted by Harris.

14, 2018, seizing contraband that included three firearms, over 1,000 grams of cocaine, 40.63 grams of cocaine base, drug packaging supplies, and $10,073 in cash. On April 8, 2019, Harris pleaded guilty to (1) possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii)(II) (Count One); and (2) possession of a firearm during and in relation to drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two).

**II.   Sentencing**

Harris's sentencing hearing was held on October 11, 2019.   In determining the sentence, the district court weighed the defendant's difficult upbringing and history of substance abuse.   But the court also noted Harris's extensive criminal record, emphasizing that his "five prior convictions" amounted to "a serious criminal history" rather than mere "mistake[s]."   App'x 71–72.   And the court expressed further concern regarding the three "very deadly weapons" Harris possessed in connection with his drug sales, including the "powerful" 12-gauge shotgun recovered from his residence.   *Id*. at 72.   Ultimately, after weighing these considerations, the district court sentenced Harris principally to a 120-month term of imprisonment followed by a five-year term of supervised release—the mandatory minimum for Harris's crimes.

5

As part of Harris's sentence, as described in part at the sentencing proceeding, the district court attached conditions to his term of supervised release. First, the court imposed—as it was required to—the eight "mandatory" conditions that accompany any federal term of supervised release. *See* United States Sentencing Guidelines ("U.S.S.G.") § 5D1.3(a). Next, the district court imposed the "Standard" conditions recommended, but not required, for every term of supervised release. *See* U.S.S.G. § 5D1.3(b)(2). The district court did not orally pronounce the Standard Conditions at sentencing; nor were the conditions provided to Harris prior to the sentencing hearing. Rather, the Standard Conditions were imposed through their inclusion in the later-filed written judgment.[3]

---

[3] The Standard Conditions of supervised release were set out in the written judgment as follows:

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must answer truthfully the questions asked by your probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first

Finally, the district court imposed certain discretionary Special Conditions of supervised release, stating:

> With respect to the sentence imposed, the conditions of release are set forth in the U.S. Probation Department's recommendations and I'm going along with all of the recommendations. . . . The conditions involve complying with a curfew for three months after being released from incarceration ["Special Condition One"]. He should participate in a mental health assessment if deemed necessary ["Special Condition Two"] and an outpatient drug treatment program ["Special Condition Three"]. He should participate in an outpatient drug treatment program so he doesn't have to have a continuation of this situation. Also there's a search condition that's recommended and I'm granting that as well ["Special Condition Four"].

App'x 73–74. The Probation Department's recommended Special Conditions were not provided to the parties before sentencing. The full details of these Special Conditions were later included in the written judgment:

> 1. For a period of three (3) months, the defendant shall comply with a curfew via electronic monitoring as directed by the probation department. The defendant will remain at his place of residence

---

getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

App'x 82.

8

from 7:00 P.M. to 7:00 A.M. The Probation Department may designate another 12-hour respective time period, if the defendant's employment, education, or observance of religious services preclude the above specified times. The curfew via electronic monitoring shall commence on a date approved by the Probation Department. During the curfew period, the defendant shall wear an electronic monitoring bracelet or similar tracking device and follow all requirements and procedures established for the curfew via electronic monitoring by the Probation Department. In addition, the defendant shall pay the costs, including the price of the electronic monitoring equipment, to the degree he is reasonable [sic] able. The defendant shall disclose all financial information and documents to the probation department to assess his ability to pay.

2. The defendant shall participate in a mental health assessment, and if deemed necessary, a mental health treatment program and/or anger management therapy as approved by the probation department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the probation department to assess his ability to pay.

3. The defendant shall participate in an assessment screening, and if deemed necessary, participate in outpatient drug treatment program approved by the U.S. probation department. The defendant shall contribute to the costs of such treatment not to exceed an amount determined reasonable by the the [sic] probation department's sliding scale for substance abuse treatment services, and shall cooperate in securing any applicable third party payment, such as insurance or Medicaid. The defendant shall disclose all financial information and documents to the probation department to assess his ability to pay. The defendant shall not consume any alcohol or other intoxicants during and after treatment, unless granted a prescription by a licensed physician and proof of same is provided to the probation

9

department. The defendant shall submit to testing during and after treatment to ensure abstinence from drugs and alcohol.

4. The defendant shall submit his person, property, house, residence, vehicle, papers computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

App'x 83 (capitalization altered). The corrected written judgment reflecting Harris's sentence, including the Standard and Special Conditions imposed, was entered a week after sentencing on October 18, 2019.

## III. Appeal

When the court pronounced the sentence in Harris's presence on October 11, 2019, it informed Harris that he could appeal the judgment to the extent he had not waived the right to do so in his plea agreement. The court also instructed Harris that any appeal must be filed within ten days.[4] No such appeal was filed.

---

[4] At the time of Harris's sentencing, he had fourteen, not ten, days to file a notice of appeal. Fed. R. App. P. 4(b) (2019). While Rule 4(b) previously prescribed a ten-day time limit, the rule was revised in 2009 to increase the window to fourteen days. *See* Fed. R. App. P. 4(b), Advisory Committee's Note to 2009 Amendment. The change

But on September 27, 2022, almost three years later, Harris filed a pro se notice of appeal—the beginning of a protracted course of events culminating in our decision today.

After Harris filed his notice of appeal, his previous counsel timely moved to be relieved, citing the conflict presented by Harris's ineffective assistance of counsel claim made in his pro se appeal. We granted this request and appointed new counsel on November 3, 2022. On March 3, 2023, Harris's newly appointed counsel filed a motion to be relieved pursuant to *Anders v. California*, 386 U.S. 738 (1967). In response, the government moved for summary affirmance on March 13, 2023, requesting "that this Court summarily affirm the judgement of conviction" on the sole ground that Harris's attorney submitted an *Anders* brief "in which he states that the case presents no non-frivolous issues for this Court's consideration." Dkt. 39, at 2. The government did not raise that the appeal was untimely under Fed. R. App. P. 4(b)(1)(A).

coincided with a change in how the Rules computed time: Before 2009, a ten-day deadline would have excluded weekends, whereas after 2009, any deadline stated in days now includes weekends. *See* Fed. R. App. P. 26(a) (2008); Fed. R. App. P. 26(a)(1)(B) (2009). (In October 2019, both deadlines would have resulted in the same time to appeal, assuming the district court's reference to the pre-2009 ten-day rule incorporated the pre-2009 method of computing time.) But because Harris has not argued that the court's erroneous instruction affected the timeliness of his appeal—filed almost three years late—we do not address that error here.

A panel of this Court subsequently conducted the required "full examination of all the proceedings, to decide whether the case is wholly frivolous" and counsel could be relieved. *Anders*, 386 U.S. at 744. Having found several nonfrivolous issues on review, this Court denied counsel's *Anders* motion on March 26, 2024, and ordered briefing on the merits of five issues related to Harris's conditions of supervised release. On May 16, 2024, counsel filed a supplemental brief as ordered. In its response, the government raised, for the first time, the untimeliness of Harris's appeal. On reply, Harris argued that the government had forfeited its objection to the timeliness of Harris's appeal by failing to raise it during the prior proceedings.

## DISCUSSION

### I. Forfeiture of Untimeliness Objection

#### A. The Untimeliness of Appellant's Notice of Appeal Is Not A Jurisdictional Bar

Federal Rule of Appellate Procedure 4(b) sets out time limits within which criminal defendants must file a notice of appeal. Fed. R. App. P. 4(b)(1)(A). Harris does not dispute that his notice of appeal was filed outside the applicable window. *See* Appellant's Reply Br. at 1–3. At one time, this would have been the end of the road; we previously considered the failure to comply with Rule

12

4(b)'s time limit a jurisdictional bar requiring the sua sponte dismissal of a criminal appeal. *See, e.g., United States v. Ferraro*, 992 F.2d 10, 11 (2d Cir. 1993) ("[T]he requirement of a timely notice of appeal in rule 4(b) is jurisdictional.").

But in *United States v. Frias*, we reconsidered this view in light of an intervening line of Supreme Court cases distinguishing a party's failure to comply with "court-promulgated rules" from its failure to adhere to statutory "limits enacted by Congress." 521 F.3d 229, 233 (2d Cir. 2008) (quoting *Bowles v. Russell*, 551 U.S. 205, 211–12 (2007)). The Supreme Court, starting from the principle that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction," reasoned that while time limits imposed by Congress through federal statutes affect a court's "adjudicatory authority," court-promulgated time limits and filing deadlines are merely "claim-processing rules that do not delineate what cases . . . courts are competent to adjudicate." *Kontrick v. Ryan*, 540 U.S. 443, 452–55 (2004). And although "subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct," adherence to "a claim-processing rule, . . . can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 456.

13

Applying these principles, our Court determined that because Rule 4(b)'s time limits are not derived from any federal statute, those limits are "not jurisdictional and are therefore capable of forfeiture by the government."[5] *Frias*, 521 F.3d at 231. *Frias* also made clear, however, that Rule 4(b) remains "mandatory and inflexible" when the government "properly objects to the untimeliness of a defendant's criminal appeal." *Id.* at 234. Harris contends that by failing to raise the Rule 4(b) bar in the context of the *Anders* motion, the government forfeited its objection. And for the reasons set forth below, we agree that by moving for summary affirmance without raising the obvious untimeliness of the appeal, the government forfeited that argument.

### B. The Government Forfeited Its Objection to Untimeliness

Parties may forfeit even the most obvious defenses by failing to raise them. *See, e.g., Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("The general rule in federal courts is that a failure to plead an affirmative defense results in a [forfeiture]."). Here, we conclude that because of the obvious untimeliness of Harris's notice of appeal (filed nearly three years after the

---

[5] Other courts of appeals to consider the issue have reached the same result. *See United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (collecting cases).

judgment), the government's failure to raise untimeliness in its motion for summary affirmance in response to defense counsel's *Anders* motion constitutes forfeiture of that argument.

We do not imply that the government is under the obligation to search the record on pain of forfeiting any argument not mentioned in filing a motion for summary affirmance in response to an *Anders* motion. It is the obviousness in this case of untimeliness that supports the inference of forfeiture. We thus leave for another day the question whether the government necessarily forfeits a Rule 4(b) timeliness objection by failing to raise it in response to an *Anders* motion. Here, given the Appeal's obvious untimeliness, the government had very good reason to know of and raise this argument for affirmance. Correspondingly, the government had little reason to wait to advance such an obvious and dispositive argument. We thus conclude only that where, as here, the untimeliness of an appeal is obvious at the time that the government files a motion for summary affirmance in response to an *Anders* motion, the government must raise that ground for affirmance in its motion or risk losing it.

Having determined the government forfeited its objection to the appeal's untimeliness, we turn to the merits of the case.

**II.     Conditions of Supervised Release**

Harris raises several challenges to the conditions imposed with his term of supervised release.   This Court reviews a district court's imposition of conditions of supervised release for abuse of discretion.   *See United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008) ("A district court retains wide latitude in imposing conditions of supervised release, and we therefore review a decision to impose a condition for abuse of discretion.").   "'When a challenge to a condition of supervised release presents an issue of law,' however, 'we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion.'"   *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019) (quoting *United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013)). "'[W]hether the spoken and written terms of a defendant's sentence differ impermissibly' is a question of law."   *United States v. Robinson*, 134 F.4th 104, 109 (2d Cir. 2025) (alteration in original) (quoting *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018)).

Before raising a variety of challenges to the Special Conditions of supervised release recommended by the Probation Department, Harris argues that the Standard Conditions imposed must be vacated because they were not orally

pronounced at sentencing. The government, noting Harris's failure to object at sentencing, argues his appeal should be relegated to plain error review. But where, as here, the defendant challenges a condition imposed in the written judgment that was not orally pronounced at sentencing or included in materials provided to the defendant prior to sentencing, "we will review the issue de novo even if the defendant failed to raise an objection in the district court." *Washington*, 904 F.3d at 207; *see also* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").

For the following reasons, we remand with instructions to the district court to vacate the 13 Standard Conditions as well as Special Conditions Two (mental health treatment), Three (drug treatment), and Four (search requirement), and to consider whether to reimpose these conditions in a manner consistent with the analysis in this opinion. In all other respects, the judgment is affirmed.

### A. Oral Pronouncement of the Standard Conditions of Supervised Release

"Both the Constitution and the Federal Rules of Criminal Procedure grant a criminal defendant the right to be present during sentencing." *United States v. Jacques*, 321 F.3d 255, 262 (2d Cir. 2003); *see also* Fed. R. Crim. P. 43(a) ( "the

17

defendant must be present at . . . sentencing"). Consequently, when "an unambiguous oral sentence [pronounced in the defendant's presence] conflicts with the [subsequently] written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999).

Our precedent, however, previously provided an exception to this general rule. We reasoned that because the Standard Conditions are "basic administrative requirement[s] essential to the functioning of the supervised release system" and "[i]mplicit in the very nature of supervised release," they could be imposed in the written judgment without oral pronouncement at sentencing. *United States v. Truscello,* 168 F.3d 61, 62–63 (2d Cir. 1999) (first alteration in original) (quoting *United States v. Smith*, 982 F.2d 757, 764 (2d Cir. 1992)). But throughout the course of several intervening decades, nine courts of appeals reached a contrary result,[6] compelling this Court to convene en banc to

[6] *See United States v. Diggles*, 957 F.3d 551, 557, 559 (5th Cir. 2020) (en banc); *United States v. Montoya*, 82 F.4th 640, 650–51 (9th Cir. 2023) (en banc); *United States v. Rogers*, 961 F.3d 291, 296–99 (4th Cir. 2020); *United States v. Hayden*, 102 F.4th 368, 371–74 (6th Cir. 2024); *United States v. Anstice,* 930 F.3d 907, 910 (7th Cir. 2019); *United States v. Walker*, 80 F.4th 880, 882–83 (8th Cir. 2023); *United States v. Geddes*, 71 F.4th 1206, 1215 (10th Cir. 2023); *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023); *United States v. Matthews*, 54 F.4th 1, 4–6 (D.C. Cir. 2022).

reconsider our ruling. *See United States v. Maiorana*, 153 F.4th 306, 311–12 (2d Cir. 2025).

Revisiting our prior decision, we reasoned that because the generally recommended Standard Conditions are ultimately discretionary, a defendant's objection could potentially change the outcome and thereby "contribute to the fairness of the procedure." *Id*. at 313 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). Thus, we concluded that defendants should have the "opportunity to object and seek tailored conditions of supervised release limited to what is 'reasonably necessary' to meet sentencing objectives." *Id*. at 313–14 (alteration adopted) (quoting *United States v. Walker*, 80 F.4th 880, 882 (8th Cir. 2023)). We therefore held "that a sentencing court intending to impose non-mandatory conditions of supervised release, including the '[S]tandard' [C]onditions described in § 5D1.3(c), must notify the defendant during the sentencing proceeding." *Id*. at 314. Specifically, we now require a court to, "at the very least, . . . expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the PSR, the Guidelines, or a notice adopted by the court." *Id*.

Here, the district court did not orally pronounce the Standard Conditions at sentencing or specifically incorporate by reference particular conditions made available to Harris. Our decision in *Maiorana* therefore requires that we remand to the district court with instructions to vacate the Standard Conditions imposed in the written judgment. If the district court intends to impose some or all of the 13 Standard Conditions in the revised judgment, it must provide the opportunity for a hearing in Harris's presence.[7] During this hearing, the district court should advise Harris as to those conditions it is imposing, either through a full recitation or through their specific incorporation by reference as set forth in *Maiorana*.[8] *Id.*

### B. Special Conditions of Supervised Release

---

[7] The government concedes that Standard Condition Twelve (risk notification condition), *see* U.S.S.G. § 5D1.3(c)(12), improperly delegates authority to Probation. *Cf. United States v. Boles*, 914 F.3d 95, 111–12 (2d Cir. 2019) (holding that Standard Condition Twelve is "vague and affords too much discretion to the probation officer"). Therefore, while the district court may not impose Standard Condition Twelve as written upon resentencing, it is free to consider whether to impose a similar condition that is compatible with our decision in *Boles*. As to Standard Condition Seven, we reject Harris's argument that this work requirement condition also improperly delegates authority to Probation.

[8] Harris may also request a written notice of the conditions the district court intends to impose on remand and, upon review, elect to waive his right to be present during the imposition of the conditions and permit the district court to impose them without convening a hearing. *Maiorana*, 153 F.4th at 315 n.14.

20

Harris brings several challenges to the imposition of four Special Conditions of supervised release. Harris argues that (1) the Special Conditions imposed in the written judgment impermissibly add burdensome punishments or restrictions to the conditions as orally pronounced at sentencing, (2) these conditions constitute an improper delegation of authority to the Probation Department, and (3) the district court erred by imposing the Special Conditions without sufficient reasoning.

**(a) Applicable Law**

"Courts are given broad latitude to design their own '[S]pecial [C]onditions'" of supervised release, *United States v. Sims*, 92 F.4th 115, 120 (2d Cir. 2024), so long as those conditions serve the non-retributive purposes of sentencing and "involve[] no greater deprivation of liberty than is reasonably necessary" to effect those purposes, 18 U.S.C. § 3583(d)(2);[9] U.S.S.G. § 5D1.3(b). Filling in this general framework, however, are some additional requirements.

---

[9] Though, in sentencing, a district court must consider, among other factors, "the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," a district court may not consider that factor in imposing a term or condition of supervised release. *See* 18 U.S.C. §§ 3583(d)(2), 3553(a)(2); *see also Tapia v. United States*, 564 U.S. 319, 326 (2011).

First, as previously noted, the district court must "orally pronounce [S]pecial [C]onditions of supervised release in open court," in the defendant's presence, ensuring a defendant the "opportunity to obtain a clear understanding of the terms of the sentence and to object to or seek clarification of its components." *United States v. Rosado*, 109 F.4th 120, 124 (2d Cir. 2024). But we do not require district courts to read verbatim the Special Conditions later imposed in the written judgment. Rather, we have permitted variances from the spoken sentence that merely add "basic administrative requirements that are necessary to supervised release" or "clarify the terms of the spoken sentence." *Washington*, 904 F.3d at 208 (quoting *United States v. Rosario*, 386 F.3d 166, 169 (2d Cir. 2004)). "[W]e do not make such allowances" when "the modifications or additions impose new 'burdensome punishments or restrictions,' or where there is 'a substantive discrepancy between the spoken and written versions of' the sentence." *Rosado*, 109 F.4th at 124–25 (first quoting *Rosario*, 386 F.3d at 168; then quoting *Washington*, 904 F.3d at 208).

Second, because "[t]he power to impose [S]pecial [C]onditions of supervised release . . . is vested exclusively in the district court," we have limited the degree to which a court can delegate authority over those conditions to the

22

Probation Department.  *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015); *see also* 18 U.S.C. § 3583(d) ("The court may order . . . further condition[s] of supervised release . . . ."); U.S.S.G. § 5B1.3(b) (allowing "[t]he court" to "impose other conditions of probation").  So while "a district court may delegate to a probation officer decisonmaking authority over certain minor details of supervised release—for example, the selection of a therapy provider or treatment schedule[—it] may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion."  *Matta*, 777 F.3d at 122.  Said another way, the "details of" a condition imposed "can be left to the probation officer," but "whether a defendant is required to attend [certain programs] *at all* must be decided by the district court, since the court alone can impose such a condition." *United States v. Villafane-Lozada*, 973 F.3d 147, 152–53 (2d Cir. 2020).

Finally, "[a] district court is required to make an individualized assessment when determining whether to impose a Special Condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018).  But "the court is under no obligation . . . to pick through every condition and explain, point-by-point, how

23

each was responsive to the offending conduct." *United States v. Thompson*, 143 F.4th 169, 178 (2d. Cir. 2025) (quoting *United States v. Kunz*, 68 F.4th 748, 760 (2d Cir. 2023)). Accordingly, "a district court generally need not articulate separate reasons for imposing every single Special Condition where it has already explained the overall reasons for its sentencing decision." *Id*.; *see also United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012) ( "Although a district court must consider the factors specified in 18 U.S.C. § 3583(c) when imposing a condition of supervised release, a district court's consideration of the § 3553(a) factors sufficient to justify a term of incarceration as procedurally reasonable can also demonstrate that the imposition of [S]pecial [C]onditions is procedurally reasonable.").

And "even in the absence of an explanation, we may still uphold a condition if 'the district court's reasoning is self-evident in the record.'" *Robinson*, 134 F.4th at 111 (quoting *Betts*, 886 F.3d at 202). So long as "the reason for a [S]pecial [C]ondition 'is self-evident in the record . . . and the condition meets the purposes of supervised release," we consider "any error . . . in this respect . . . harmless." *Thompson*, 143 F.4th at 177 (alterations accepted) (quoting *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004)).

**(b) Special Condition One: Curfew Requirement**

24

Harris first argues that the written judgment added new burdensome punishments or restrictions to Special Condition One, the curfew condition, as orally pronounced. He argues in the alternative that the district court did not provide sufficient explanation for its imposition of this condition. We find neither argument convincing.

To begin, the district court specifically pronounced at sentencing that Harris would be subject to a curfew at the commencement of supervised release, explaining that Harris must comply with "a curfew for three months after being released from incarceration." App'x 73. The written judgment specifies that the curfew will be in effect between a 12-hour period, from 7:00 p.m. to 7:00 a.m. for these three months, and that during this period each day, Harris must "wear an electronic monitoring bracelet or similar tracking device," and that he must pay the costs of his electronic monitoring "to the degree he is reasonable [sic] able." *Id*. at 83 (capitalization altered). Harris argues that these further specifications imposed new restrictions on his liberty beyond the "basic administrative requirements" and "clarify[ing] terms" that district courts may properly add to a written judgment. *See Washington*, 904 F.3d at 208 (internal quotation marks omitted). We disagree.

25

While our Court has not squarely confronted this precise challenge to a curfew condition, we have determined that it is permissible for a district court to impose a curfew but "le[ave] to the Probation Office's discretion . . . such details as the curfew's start date and nightly duration." *United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019). We categorized the specific timing of the curfew imposed as a "minor detail[]" of supervised release that the district court need not even decide itself. *Id*. It follows that adding the curfew's specific hours to the written judgment is a permissible clarification of the details of the condition imposed—and certainly does not impose a new "burdensome punishment[] or restriction[]" above and beyond the orally pronounced curfew. *Rosado*, 109 F.4th at 125 (quoting *Rosario*, 386 F.3d at 168).

The inclusion of the electronic monitoring subcondition in the written judgment similarly did not impose a new burdensome restriction on Harris. Rather, it merely provided the administrative method for implementing the restriction on Harris's liberty already pronounced at sentencing—a "basic administrative requirement[]" of the orally pronounced curfew condition that did not impose an additional burdensome punishment. *Washington*, 904 F.3d at 208 (internal quotation marks omitted).

26

We next consider the sufficiency of the district court's explanation for its imposition of the curfew condition and conclude that the district court did not err, much less plainly err, in explaining its decision.[10]    The U.S. Sentencing Guidelines explain that "a curfew may be imposed if the court concludes that restricting the defendant to his place of residence during evening and nighttime hours is necessary to . . . to protect the public from crimes that the defendant might commit during those hours, or to assist in the rehabilitation of the defendant."    U.S.S.G. § 5B1.3(e)(5).    At sentencing, the court noted the defendant's "serious criminal history," with convictions for multiple drug-related crimes, and that it was "concerned" regarding Harris's possession of "very deadly weapons" in connection with these crimes.    App'x 71–72.    The district court therefore clearly explained that its review of the record led it to conclude that Harris posed a threat to public safety.    While the district court did not specifically explain its decision

---

[10] As explained, Harris's other challenges, while not raised below, are subject to *de novo* review because they relate to aspects of his conditions of supervised release that were not pronounced at sentencing.    *Washington*, 904 F.3d at 207.    But the district court orally pronounced the curfew condition, providing notice that such a condition would be applied, and Harris did not object to the sufficiency of the district court's explanation for its imposition of that condition.    We therefore subject this objection to plain error review. *See United States v. Arguedas*, 134 F.4th 54, 68 (2d Cir. 2025) (reviewing defendant's objection to the sufficiency of a district court's explanation of an orally pronounced condition for plain error when the defendant did not object below).

27

to impose a curfew as one of the conditions of supervised release, "the court is under no obligation . . . to pick through every condition and explain, point-by-point, how each was responsive to the offending conduct." *Thompson*, 143 F.4th at 178 (quoting *Kunz*, 68 F.4th at 760). "Just as we have held that a district court typically need not separately articulate its reasons for imposing a term of supervised release when it has already generally stated its reasons for imposing a term of imprisonment, *see United States v. Williams*, 998 F.3d 538, 541–42 (2d Cir. 2021), a district court generally need not articulate separate reasons for imposing every single Special Condition where it has already explained the overall reasons for its sentencing decision." *Id*. The district court explained its concerns that Harris posed a threat to public safety. We therefore conclude that it sufficiently explained its determination that the public should be protected in the immediate aftermath of Harris's release through a three-month period of restrictions on his movements during evening and nighttime hours.

**(c) Special Conditions Two and Three: The Mental Health Treatment and Substance Abuse Treatment Conditions**

Harris next argues that Special Conditions Two and Three, the mental health and substance abuse treatment conditions imposed by the district court, improperly delegate judicial authority to the Probation Department. We agree.

28

Both conditions provide that Harris "shall participate in" an assessment, "and if deemed necessary," a treatment program "as approved by the Probation Department." App'x 83 (capitalization altered). This Court has remanded cases involving similar conditions of supervised release, explaining that they leave open the possibility that "the court intend[ed] to leave the issue of the defendant's participation in therapy to the discretion of the probation officer," in which case the "condition . . . constitute[s] an impermissible delegation of judicial authority and should not be included." *United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001); *see also United States v. Young*, 910 F.3d 665, 671 (2d Cir. 2018) (finding an impermissible delegation where the district court imposed a condition requiring the defendant to complete an evaluation but to enter treatment only "as deemed necessary by the U.S. Probation Office"). Here, the substance abuse and mental health treatment conditions indicate that Harris's participation in a treatment program is required only if "deemed necessary," presumably by the Probation Department, and thus both suffer from the same defect. We therefore remand as to these conditions, directing the district court to vacate Special Conditions Two and Three and to make clear, in the event similar treatment conditions are

29

imposed, that the district court itself will make the determination whether Harris participates in treatment, based on appropriate on-the-record findings.[11]

### (d) Special Condition Four: The Search Condition

Regarding Special Condition Four, the search condition, we agree with Harris that the condition as included in the written judgment added burdensome restrictions to the condition as orally pronounced. At sentencing, the district court noted only that it was "granting" "a search condition that's recommended." App'x 74. The search condition as included in the written judgment required that Harris submit to searches conducted by the Probation Department but also imposed an additional requirement that Harris notify third parties that they may also be subject to search. App'x 83 ("The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition." (capitalization altered)). We have previously found that including this third-party search subcondition in the written judgment adds "burdensome punishments or restrictions" when not included in the oral pronouncement, and that this added restriction therefore must be removed, as in the event of conflict,

---

[11] Because we direct the relevant portions of these conditions to be vacated on delegation grounds, we do not reach Harris's other challenges to the imposition of Special Conditions 2 and 3.

30

"the oral pronouncement controls." *United States v. Bishop*, No. 19-2064, 2022 WL 1787717, at \*2 & n.2 (2d Cir. June 2, 2022) (summary order). In addition, the full scope of the search permitted under Special Condition Four is "arguably more burdensome" than that indicated at sentencing.[12] *Id.* at \*2. We therefore remand to the district court with instructions to vacate Special Condition Four in its entirety. The district court may then determine whether a search condition should be imposed, making on the record findings supporting its imposition and clarifying the scope of the condition in its oral pronouncement of the same.[13]

**CONCLUSION**

For the foregoing reasons, we **REMAND** this matter to the district court with instructions to vacate the 13 Standard Conditions, as well as Special Conditions Two, Three, and Four, and for resentencing as to these conditions

---

[12] The written condition states: "The defendant shall submit his person, property, house, residence, vehicle, papers[,] computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer." App'x 83 (capitalization altered). The district court at the sentencing hearing merely noted "there's a search condition recommended" without setting out the scope of search permitted. App'x 74.

[13] Because we remand for the district court to vacate Special Condition 4, we need not address Harris's other arguments regarding this condition.

31

consistent with this opinion.   We otherwise **AFFIRM** the judgment of the district court.